896 F.Supp. 1012 (1995)
Jon R. REMLINGER, Plaintiff,
v.
STATE OF NEVADA, et al., Defendants.
No. CV-N-95-473-ECR.
United States District Court, D. Nevada.
July 31, 1995.
*1013 Jeffrey A. Dickerson, Reno, NV, for plaintiff.
Frankie Sue Del Papa, Attorney General for the State of Nevada by George H. Taylor, Deputy Attorney General, Carson City, NV, for defendants.

ORDER
EDWARD C. REED, Jr., District Judge.
Jon Remlinger is a pilot, employed until recently by the Division of Wildlife, which is a part of the State of Nevada's Department of Conservation and Natural Resources. He was laid off last Friday, after funding for his job was eliminated. (The position still exists, but will not be filled.) Remlinger has filed a complaint under the Americans with Disabilities Act, 42 U.S.C. § 1983, and state law, and seeks a temporary restraining order and preliminary injunction compelling his reinstatement. A hearing was held this morning, at *1014 which both sides presented evidence and argument. Remlinger has not shown that preliminary relief is appropriate. The motion will be denied.

I. Facts

The essence of Remlinger's complaint is that he is (or is perceived as being) disabled within the meaning of the ADA, that his superiors discriminated against him on that basis by not allowing him to attend flight school, and that their decision to eliminate his job is an act of retaliation against him for filing a discrimination complaint with the Nevada Equal Rights Commission. Remlinger cites several statements by his superiors in support of these contentions. He also makes a due process claim, on the ground that, as a tenured state employee, he was entitled to certain procedural protections before being laid off, protections which he did not receive. "No economic reason," he argues, "justifies the elimination of [his] position, and the `elimination' of the position is a sham designed to disguise Defendant Molini's true intent to terminate [Remlinger] without cause and in retaliation for his complaint of discrimination." Doc. # 1, at 8.
The State takes a different view. It explains that it is consolidating the Division of Wildlife's air operations with those of the Division of Forestry, and that this required obtaining an appropriation from the Legislature to build a new hangar. The Director of the Department of Conservation, Pete Morros, in seeking the appropriation, testified before the Legislature that one pilot would be eliminated from the Division of Wildlife, so that there would be four pilots in the consolidated pool. (The State seems to suggest that the eliminated pilot would come from the Division of Wildlife because its pilots, unlike Division of Forestry pilots, are not certified to fly firefighting missions.) And, the State explains, Remlinger's job is being abolished because he is the most junior pilot in the Division of Wildlife.

II. Injunctive Relief

A. Jurisdiction

We have federal question jurisdiction under both the ADA and § 1983. The State's sovereign immunity is expressly abrogated by the ADA, 42 U.S.C. § 12202, and injunctive relief is available to private parties. See 42 U.S.C. § 12117(a). Injunctive relief is available under § 1983 against state officers acting in their official capacities, and one of the defendants here is Molini, who is the official with authority to hire and fire that Division's employees, including Remlinger. Doc. # 7 Molini Aff. at 2.
While we have jurisdiction, the fact remains that Remlinger seeks a restraining order and preliminary injunction. Before that sort of relief will issue under the ADA or under § 1983, the traditional equitable requisites for injunctive relief must be established.[1] Here they have not been.

B. The prerequisites for issuance of preliminary relief

1. Elements

Remlinger seeks preliminary injunctive relief and therefore must meet one of two tests. Under the first, he must show that:
(1) he will suffer irreparable injury if the injunction is not granted;
(2) he will probably prevail on the merits;
(3) the State will not be harmed by the injunction more than he is helped by it; and,
(4) granting the injunction is in the public interest.
*1015 Under the second, Remlinger must show either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor (though no matter how far the hardships tipped in his favor, he would have to show at least a fair chance of success on the merits). See Stanley v. University of Southern California, 13 F.3d 1313, 1319 (9th Cir.1994) (citing Martin v. International Olympic Committee, 740 F.2d 670, 674-75 (9th Cir.1984)).

2. Probable success on the merits

In support of his ADA claim, Remlinger alleges that his superior, Terry Crawforth, in a discussion about attendance at flight safety school, stated that he would have to test Remlinger's "longevity" because "you have a disability, we don't know how long you're going to be around." Doc. # 1, at 6. He alleges that another superior, Paul Lovemark, told him not to file a discrimination complaint "or they'll fire you," and later threatened to fire him if he did not drop the complaint. Against this, we have the State's explanation that Remlinger is simply the victim, for lack of seniority, of its consolidation of its air operations. (The State claims that the consolidation plan was the subject of testimony before the Legislature, so this is probably a matter of record.) In response, Remlinger claims that he is, in fact, not the junior pilot in the Department of Conservation. In support of his due process claim, Remlinger alleges that he did not receive the 30 days' notice to which he was statutorily entitled before being laid off. The State did not seriously contest this at the hearing.
Remlinger has not shown that he will probably succeed on the merits of his ADA claim. The cases best suited to preliminary relief are those in which the important facts are undisputed, and the parties simply disagree about what the legal consequences are of those facts. The court in such a case can take the undisputed facts, apply the law to them, and fairly easily decide which party is likely to prevail. See, e.g., Shoen v. AMERCO, 885 F.Supp. 1332 (D.Nev.1994). By contrast, this is obviously a case which will involve factual disputes, e.g., whether Remlinger's superiors made the statements attributed to them, and did the things Remlinger alleges; what their motivations were; and whether Remlinger is or is not the most junior pilot. These matters were not brought out adequately at the hearing. We have two conflicting stories, and it is impossible to sort out, at this stage, which is to be believed. The showing, moreover, is particularly inadequate because this case involves the internal operations of a state government, and must therefore "contend with the well-established rule that the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." Rizzo, 423 U.S. at 378, 96 S.Ct. at 607-08 (citations omitted) (internal quotations omitted). We will assume, however, for present purposes, that Remlinger has established a clear probability of success on the merits on his procedural due process claim.

3. Irreparable injury

Assuming, then, that Remlinger will succeed on the merits of his due process claim (however de minimis the violation may have been, as the State argued), we turn next to the question whether he will suffer irreparable injury if he is not reinstated pending a final resolution of this case on the merits. He has not shown that he will.
The reason is that what Remlinger stands to lose, if his job is abolished, is his regular paycheck, health insurance, seniority, State contributions to his retirement plan, and accrued sick leave and vacation time. For each of those losses, however, there are the legal remedies of back pay and reinstatement. See 42 U.S.C. § 12117(a) (adopting, in ADA cases, Title VII remedies available under 42 U.S.C. § 2000e-5(g)).
In his briefing, Remlinger argues that he and his family depend on a regular paycheck from the State. That is not enough to merit an injunction. As the Supreme Court has stated, irreparable harm is not established in employee discharge cases by financial distress or inability to find other employment, unless truly extraordinary circumstances are shown. See Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 *1016 (1974). Justice Rehnquist explained that "insufficiency of savings or difficulties in immediately obtaining other employmentexternal factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itselfwill not support a finding of irreparable injury, however severely they may affect a particular individual." Id. at 92 n. 68, 94 S.Ct. at 954 n. 68; see also Duke, 695 F.2d at 1137 & n. 1.
Other courts have elaborated on this theme, suggesting that, where the claimed injury is economic in nature, the discharged (or soon-to-be discharged) employee must show that she:
(1) has very little chance of securing further employment;
(2) has no personal or family resources at her disposal;
(3) lacks private unemployment insurance;
(4) is unable to obtain a privately financed loan;
(5) is ineligible for any type of public support or relief; and
(6) any other compelling circumstances which weigh heavily in favor of granting interim equitable relief.
Williams v. State University of New York, 635 F.Supp. 1243, 1248 (E.D.N.Y.1986) (citing Aguilar v. Baine Service Systems, Inc., 538 F.Supp. 581 (S.D.N.Y.1982)). "In essence the plaintiff must quite literally find herself being forced into the streets or facing the spectre of bankruptcy before a court can enter a finding of irreparable harm." Id.; see also Pollis v. New School for Social Research, 829 F.Supp. 584, 591 (S.D.N.Y. 1993) (same); Stewart v. INS, 762 F.2d 193, 199-200 (2d Cir.1985); cf. Petrie v. Commissioner, 686 F.Supp. 1407, 1416 n. 13 (D.Nev. 1988) (taxpayer's refund suit; "[t]he financial difficulties which plaintiff may encounter pending a refund suit do not establish irreparable harm").[2]
At the hearing, Remlinger suggested that loss of his health benefits will work an irreparable injury on him, because one of his dependents will soon need surgery. But the burden of proof is on Remlinger, and he did not establish that he will, in fact, lose his insurance coverage. Indeed, his own testimony suggested that he can continue that coverage, though at some increased cost. If that is so, then the hardship he faces is purely financial, and, though it may be serious, can be remedied if he ultimately prevails on his claim. See McCormick v. Claytor, 441 F.Supp. 622, 624 (D.Or.1977) (Navy serviceman's irretrievable loss of medical benefits, during period of administrative review by military of his discharge, would not be "irreparable harm of such a magnitude as to justify issuance of a preliminary injunction"). Further, Remlinger did not establish with any clarity the nature or seriousness of his dependent's medical condition. Both of the cases he cited, Leonhardt v. Holden Business Forms, Inc., 828 F.Supp. 657 (D.Minn. 1993), and Kekis v. Blue Cross and Blue Shield, 815 F.Supp. 571 (N.D.N.Y.1993), involved plaintiffs at death's door, seeking injunctions to force their insurance companies to pay for autologous bone marrow transplant procedures, over the companies' objections that the treatment was experimental and thus not covered. Nothing like that has been suggested, let alone demonstrated, in this case.
There are cases in which courts have held that non-economic harm, if suffered, will be irreparable, and therefore will justify preliminary *1017 relief.[3] Remlinger, however, does not claim that he will suffer any non-economic harm, and, in any event, the emotional distress normally suffered upon the loss of a job will not support the issuance of preliminary relief: as the Pollis court put it, for noneconomic harm to support an injunction, "the resultant non-economic effect upon the employee of the employer's adverse action must have about it an extra dimension which distinguishes the case from those of all other employees similarly situated." Pollis, 829 F.Supp. at 601. We do not minimize the difficulties Remlinger will no doubt suffer because of the State's abolition of his job. But legal remedies are available if he prevails on the merits. Sampson's bar to preliminary relief, which Remlinger's counsel accurately described as presenting a major obstacle to his motion, has not been surmounted here.
IT IS THEREFORE HEREBY ORDERED that Remlinger's motions (Docs. # 2 and # 3), seeking a temporary restraining order and preliminary injunction, are DENIED.
NOTES
[1] The ADA expressly incorporates Title VII remedies, 42 U.S.C. § 12117(a), and, under Title VII, "[t]he usual tests for a preliminary injunction apply to employment discrimination cases." Anderson v. United States, 612 F.2d 1112, 1116 (9th Cir.1979); Duke v. Langdon, 695 F.2d 1136, 1137, aff'd on reh'g, 701 F.2d 768 (9th Cir.1983). Similarly, injunctions under Section 1983 are governed by traditional equitable principles, see Rizzo v. Goode, 423 U.S. 362, 378, 96 S.Ct. 598, 607-08, 46 L.Ed.2d 561 (1976), and the plaintiff must therefore establish both irreparable injury and lack of an adequate legal remedy. Allee v. Medrano, 416 U.S. 802, 814, 94 S.Ct. 2191, 2199-2200, 40 L.Ed.2d 566 (1974).
[2] In Jensen v. IRS, 835 F.2d 196 (9th Cir.1987), the Ninth Circuit granted an injunction against an IRS levy on a taxpayer's earnings. The court acknowledged Sampson's general rule that "monetary harm does not usually establish irreparable harm," but explained that the instant case was distinguishable on two grounds. First, the monetary harm involved was so severe as to deprive the taxpayer of the "ability to provide necessities of life for himself and his family." Second, the taxpayer's claim was that the IRS had not given him a notice of deficiency, which, had it been given, would have entitled him to challenge the claim in tax court without first paying the tax. Thus, if forced to pay the tax through a levy pending resolution of his claim on the merits, he would lose the "valuable administrative remedy" of being able to "litigate [the] tax liability before paying the tax," a loss which itself would be a "substantial hardship" to him. Id. at 199 n. 2. No severe hardship, beyond that always attendant to a job loss, is alleged here, and obviously the special tax litigation considerations involved in Jensen are not present here.
[3] Among them is Chalk v. United States District Court, 840 F.2d 701 (9th Cir.1988), in which the plaintiff, a teacher of hearing-impaired children, had developed AIDS. As the Pollis court aptly summarized it:

Rejecting plaintiff's medical evidence that his presence in the classroom did not endanger his students, the school board removed plaintiff from the classroom and assigned him to preparing grant proposals. The Ninth Circuit noted: "This job is `distasteful' to Chalk, involves no student contact, and does not utilize his skills, training or experience." In those circumstances Chalk suffered severe damage because "[h]is closeness to his students and his participation in their lives is a source of tremendous personal satisfaction and joy to him and of benefit to them." The Ninth Circuit also said that "[a]n additional factor favoring a preliminary injunction here arises from the very nature of Chalk's affliction." Because AIDS is always fatal, "[a] delay, even if only a few months, pending trial represents precious, productive time irretrievably lost to him."
Pollis, 829 F.Supp. at 599 (quoting Chalk, 840 F.2d at 701, 710) (citations omitted). It was, the Ninth Circuit held, an abuse of discretion not to issue the preliminary injunction (a holding perhaps influenced by Chalk's "particularly poignant position by reason of his AIDS-shortened life expectancy"). Id. at 601.
Other district courts in this circuit have reached similar conclusions, but, it seems, only where the threatened non-economic harm is quite serious. See, e.g., EEOC v. State of Hawaii, 764 F.Supp. 158 (D.Hawaii 1991) (injunction barring forcible retirement of state court judge when he turned 70, where, because of his age, he would likely not be able to find "other employment of comparable status and responsibility," he would not be allowed to serve even as a temporary judge, and his "emotional and psychological health" would suffer "as a result of being forced to retire" while "still fully competent to perform his duties"; the court noted, as an additional factor, financial hardship to the judge, where retirement benefits would be substantially less than his salary); Greene v. Bowen, 639 F.Supp. 554, 563 (E.D.Cal.1986) (physician entitled to injunction barring federal government from excluding him from Medicare and from publishing notice of exclusion before administrative review, where physician, if barred, would not be able to recover money lost as a result, even if he ultimately prevailed on the merits, and where publication of notice of suspension in local newspaper in small county would have "a devastating effect on his professional reputation beyond his Medicare practice"); McGinnis v. United States, 512 F.Supp. 517, 525 (N.D.Cal. 1980) (injunction barring dismissal of postal worker for refusal to distribute draft registration materials appropriate, where court found plaintiff had a strong likelihood of success on the merits of her Title VII claim and her first amendment rights were at stake); see also Pollis, 829 F.Supp. at 599-601 (summarizing and analyzing other cases in this genre).