In re Kristine ORTENZO HAYES
and John Hayes, Debtors.

Joseph D. Donaldson, Individually and
as Trustee of the S.L. Thompson
Trust, Sheila Donaldson, as Trustee of
the S.L. Thompson Trust, Plaintiffs,

v.

Kristine Ortenzo Hayes and John
Hayes, Defendants.

Bankruptcy No. RS03–15966 PC.
Adversary No. RS03–1479 PC.

United States Bankruptcy Court,
C.D. California,
Riverside Division.

Sept. 3, 2004.

Norman L Hanover, Martha A. Warriner, Reid & Hellyer, Riverside, CA, for Defendants.

Victor Lewis, Law Offices of Victor Lewis, Menifee, CA, for plaintiffs.

## MEMORANDUM DECISION

PETER H. CARROLL, Bankruptcy Judge.

Defendants, Kristine Ortenzo Hayes and John Hayes (collectively, "Hayes") seek a summary judgment against Plaintiffs, Joseph D. Donaldson, Individually and as Trustee of the S.L. Thompson Trust, and Sheila Donaldson, as Trustee of the S.L. Thompson Trust (collectively, "Donaldson") dismissing Donaldson's causes of action under 11 U.S.C. § 523(a)(2)(A) and (a)(6). The court, having considered the pleadings, evidentiary record, and arguments of counsel, makes the following findings of fact and conclusions of law [1] pursu-

---

1. To the extent that any finding of fact is construed to be a conclusion of law, it is

ant to Fed.R.Civ.P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R. Bankr.P. 7052.

## I. STATEMENT OF FACTS

On or about December 22, 1999, Hayes executed a written contract with Donaldson and Boosters Plus, Inc. denominated "Agreement for the Purchase and Sale of Business" ("Agreement") under the terms of which Hayes agreed to purchase the assets of a business formerly operated by Donaldson known as "Boosters Plus" for the sum of $250,000. Hayes paid Donaldson the sum of $12,500 upon execution of the Agreement, and agreed to pay Donaldson an additional $12,500 not later than 90 days after the closing date of the sale. Hayes also executed a promissory note in the original principal sum of $225,000 payable to the S.L. Thompson Trust dated December 22, 1999, and bearing interest at the rate of 8% per annum. The note was payable in 83 monthly installments of $3,500 each, commencing on February 10, 2000, and continuing regularly and monthly thereafter until January 10, 2007, when the remaining balance was due and payable. Hayes' note was secured by a lien on the assets of Boosters Plus.

On January 26, 2000, Hayes paid the sum of $12,500 to Donaldson pursuant to the Agreement. On February 15, 2000, Hayes commenced monthly payments to Donaldson under the note. Hayes made four payments of $3,500 each to Donaldson for the months of February through May 2000. Thereafter, Hayes paid 16 installments of $3,506.90 each to Donaldson for the months of June 2000 through October 2001. Due to the shrinking cash flow of the business, Hayes thereafter experienced difficulty making the full monthly note payment to Donaldson. Between November 14, 2001 and March 21, 2002, Hayes made 9 semi-monthly payments to Donaldson of $1,735.45 each. In April 2002, Hayes made semi-monthly payments of $2,103.45 and $2,850, respectively.

In May 2002, Hayes discussed the cash flow problems with Donaldson. After their discussion, Hayes reduced the note payments to $2,500 per month until the cash flow of Boosters Plus permitted the resumption of full payments under the note. Hayes made semi-monthly payments of $1,250 to Donaldson from May 2002 through August 2002.

By September 1, 2002, Hayes had paid Donaldson a total of $125,844.90 pursuant to the Agreement. By that time, however, the business was no longer generating sufficient income to make the payments to Donaldson. Hayes tendered the assets of the business to Donaldson by letter dated September 30, 2002. Donaldson did not respond to the letter nor take action to obtain possession of the collateral securing the note.

On December 12, 2002, Donaldson filed suit in state court to recover damages for Hayes' breach of the Agreement. When Hayes failed to respond to the complaint, Donaldson caused a default judgment in the amount of $207,000 to be entered in the state court action on February 3, 2003.

On April 18, 2003, Hayes filed a voluntary petition under chapter 7 of the Bankruptcy Code. Donaldson was listed in Schedule F as the holder of an unsecured non-priority claim in the amount of $200,000. On July 21, 2003, Donaldson filed the complaint in this adversary proceeding seeking a determination that the state court judgment for $207,000, plus

hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such.

The court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.

interest at 10% per annum from September 30, 2002, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) or, alternatively, 11 U.S.C. § 523(a)(6). On December 5, 2003, Hayes filed an answer denying the allegations in Donaldson's complaint. The deadline for discovery expired on March 31, 2004.

On July 12, 2004, Hayes filed a motion for summary judgment pursuant to Fed. R.Civ.P. 56, as incorporated into Fed. R. Bankr.P. 7056. Although properly served with a copy of the motion and notice of the hearing, Donaldson neglected to file a response to Hayes' motion until two days

prior to the hearing. Donaldson did not seek an enlargement of time to respond nor leave of the court prior to filing the late response. At the hearing on August 19, 2004, Hayes objected to Donaldson's untimely response and requested that the response be stricken.[2] The court heard argument with respect to Hayes' motion for summary judgment and motion to strike, and took the matters under submission.

## II. DISCUSSION

This court has jurisdiction over this adversary proceeding pursuant to 28

---

2. Rule 9013–1(e) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Central District of California ("L.B.R.") states, in pertinent part:

A notice of motion and motion for summary judgment or partial summary adjudication pursuant to F.R.B.P. 7056 shall be served and filed no later than 35 calendar days prior to the date of the hearing on the motion. There shall be served and lodged with each motion for summary judgment or partial summary adjudication a proposed statement of uncontroverted facts and conclusions of law, and a separate proposed summary judgment. Such proposed statement shall state the material facts as to which the moving party contends there is no genuine issue and shall reference each fact to the evidence that supports it.

*Any party who opposes the motion shall, not later than 21 calendar days before the hearing on the motion, serve and file a separate concise "statement of genuine issues" with responding papers setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, and referencing each fact to the evidence which establishes the genuine issue to be litigated.* Any reply by the moving party shall be served and filed no later than 10 calendar days before the hearing on the motion.

In determining any motion for summary judgment or partial summary adjudication, the court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such facts are (1) included in the "statement of genuine issues" and (2) con-

troverted by declaration or other evidence filed in opposition to the motion.

L.B.R. 9013–1(e) (emphasis added). Papers not timely filed and served may be deemed by the court to be consent to the granting or denial of the motion, as the case may be. L.B.R. 9013–1(a)(11). Furthermore, "[a] party filing any document in support of, or in opposition to, any motion noticed for hearing ... after the time for filing the same shall have expired, may be subject to the sanctions listed in Local Bankruptcy Rule 1002–2." L.B.R. 9013–1(a)(3).

In this case, Hayes properly filed and served the motion for summary judgment on July 12, 2004. Donaldson's response, together with a separate "statement of genuine issues," was due not later than July 29, 2004. Donaldson's response was not filed until August 18, 2004. While Donaldson's conduct is inexcusable, a trial court is not permitted to grant summary judgment based upon the opposing party's failure to respond as required by a local rule. *See, e.g., Cristobal v. Siegel,* 26 F.3d 1488, 1491 (9th Cir.1994) (holding that trial court erred in granting summary judgment based upon the opposing party's failure to respond as required by local rule); *Hibernia Nat'l Bank v. Administracion Cen. Sociedad Anonima,* 776 F.2d 1277, 1279 (5th Cir.1985) (stating that "a motion for summary judgment cannot be granted simply because there is no opposition, even if the failure to oppose violated a local rule"). Therefore, the court will deny Hayes' motion to strike and consider Donaldson's response in conjunction with adjudication of Hayes' motion for summary judgment.

U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I). Venue is appropriate in this court. 28 U.S.C. § 1409(a). To prevail under 11 U.S.C. § 523(a)(2)(A) or (a)(6), the plaintiff must establish the allegations of the complaint by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Lansdowne v. Cox (In re Cox)*, 41 F.3d 1294, 1297 (9th Cir.1994). Objections to the dischargeability of a debt are to be literally and strictly construed against the objector and liberally construed in favor of the debtor. *Quarre v. Saylor (In re Saylor)*, 108 F.3d 219, 221 (9th Cir.1997); *Hayhoe v. Cole (In re Cole)*, 226 B.R. 647, 653 (9th Cir. BAP 1998).

## A. Standard for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).[3] The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the material facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994).

Under Rule 56(c), the moving party bears the initial burden of establishing that there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A 'material fact' is one that is relevant to an element of a claim or defense or whose existence might affect the outcome of the suit. The materiality of a fact is thus determined by the substantive law governing the claim or defense." *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). Genuine issues of material fact are those "factual issues that make a difference to the potential outcome and 'that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.' " *Svob. v. Bryan (In re Bryan)*, 261 B.R. 240, 243 (9th Cir. BAP 2001) (*quoting Anderson*, 477 U.S. at 250, 106 S.Ct. 2505). In other words, a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Once the moving party's burden is met by presenting evidence which, if uncontroverted, would entitle the moving party to a directed verdict at trial, the burden then shifts to the respondent to set forth specif-

---

3. Rule 56 of the Federal Rules of Civil Procedure, applicable to adversary proceedings by virtue of Rule 7056, provides for summary judgment adjudication of issues:

> **(c) Motion and Proceedings Thereon** ... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law
> ...
> ...

> **(e) Form of Affidavits; Further Testimony; Defense Required** ... When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(c) & (e).

ic facts demonstrating that there is a genuine issue for trial. *Rudberg v. State of Nevada,* 896 F.Supp. 1017, 1020 (D.Nev. 1995) (*citing Anderson,* 477 U.S. at 250, 106 S.Ct. 2505). The respondent "will not be able to withstand a motion for summary judgment merely by making allegations; rather, the party opposing the motion must go beyond its pleadings and designate specific facts by use of affidavits, depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial." *In re Ikon Office Solutions, Inc.,* 277 F.3d 658, 666 (3d Cir.2002). A mere "scintilla" of evidence supporting the respondent's position will not be sufficient. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine' issue for trial." *Hawking v. Ford Motor Credit Co.,* 210 F.3d 540, 545 (5th Cir.2000).

The Ninth Circuit has held repeatedly that it is error to grant a motion for summary judgment simply because the opponent failed to oppose. *In re Rogstad,* 126 F.3d 1224, 1227 (9th Cir.1997); *see Henry v. Gill Indus., Inc.,* 983 F.2d 943, 950 (9th Cir.1993) (stating that summary judgment is improper where the moving papers are insufficient to support the motion or on their face reveal a genuine issue of material fact); *Hoover v. Switlik Parachute Co.,* 663 F.2d 964, 967 (9th Cir.1981) (stating that even in the absence of evidence in support of the opposition, summary judgment should not be granted if the evidence in support of the motion is insufficient). In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in a light most favorable to the nonmoving party. *See Jonas v. Resolution Trust Corp. (In re Comark),* 971 F.2d 322, 324 (9th Cir.1992). All reasonable doubt as to the existence of genuine issues of material fact must be resolved against the moving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

**B. *Summary Judgment Evidence***

The following facts are either undisputed or established by the declarations submitted in support of Hayes' motion for summary judgment:

1. On or about December 22, 1999, Hayes executed the Agreement with Donaldson and Boosters Plus, Inc. for the purchase the assets of "Boosters Plus" for the sum of $250,000.

2. Hayes paid Donaldson the sum of $12,500 upon execution of the Agreement, and agreed to pay Donaldson an additional $12,500 not later than 90 days after the closing date of the sale.

3. Hayes also executed a promissory note in the original principal sum of $225,000 payable to the S.L. Thompson Trust dated December 22, 1999, bearing interest at the rate of 8% per annum, and payable in monthly principal and interest installments of $3,500 each, commencing on February 10, 2000, and continuing regularly and monthly thereafter until January 10, 2007, when the remaining balance was due and payable.

4. Hayes' note was secured by a lien on the assets of Boosters Plus.

5. On January 26, 2000, Hayes paid the sum of $12,500 to Donaldson pursuant to the Agreement.

6. Commencing February 15, 2000, Hayes made monthly payments to Donaldson under the note. Hayes made four payments of $3,500 each to Donaldson for the months of February through May 2000.

7. Hayes made 16 payments of $3,506.90 to Donaldson for the months of June 2000 through October 2001.

8. Between November 14, 2001 and March 21, 2002, Hayes made 9 semi-monthly payments to Donaldson of $1,735.45 each.

9. In April 2002, Hayes made semi-monthly payments of $2,103.45 and $2,850, respectively.

10. In May 2002, Hayes discussed the cash flow problems with Donaldson. Thereafter, Hayes began paying, and Donaldson began accepting, semi-monthly payments of $1,250 from May 2002 through August 2002.

11. Hayes' last payment to Donaldson was made on or about August 16, 2002.

12. By September 1, 2002, Hayes had paid Donaldson monthly payments of $100,844.90, plus the down payment of $25,000, for a total of $125,844.90 pursuant to the Agreement.

13. By letter dated September 30, 2002, Hayes tendered the assets of Boosters Plus to Donaldson.

14. Donaldson did not respond to the letter nor take action to obtain possession of the collateral securing the note.

15. On December 12, 2002, Donaldson filed a complaint against Hayes in the Superior Court of the State of California, County of Riverside, to recover damages for Hayes' alleged breach of the Agreement.

16. Hayes failed to respond to the complaint, and a default judgment in the amount of $207,000 was entered against Hayes in the state court action on February 3, 2003.

17. On April 18, 2003, Hayes filed a voluntary petition under chapter 7 of the Bankruptcy Code.

18. On July 21, 2003, Donaldson filed the complaint in this adversary proceeding seeking a determination that the state court judgment for $207,000, plus interest at 10% per annum from September 30, 2002, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A) or, alternatively, 11 U.S.C. § 523(a)(6).

## C. *Section 523(a)(2)(A)*

■ Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge in bankruptcy "any debt ... for money, property, services, or an extension, renewal, or refinance of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) prevents the discharge of all liability arising from fraud, including both punitive and compensatory damages. *Cohen v. de la Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 1219, 140 L.Ed.2d 341 (1998).

■ To establish that a debt is nondischargeable under § 523(a)(2)(A), the creditor must show by a preponderance of the evidence that (a) debtor made a representation; (b) at the time, debtor knew the representation was false; (c) debtor made the representation with the intention and purpose of deceiving the creditor; (d) the creditor justifiably relied on the debtor's representation, and (e) the creditor sustained the alleged loss and damage as the proximate result of such representation. *Diamond v. Kolcum (In re Diamond),* 285 F.3d 822, 827 (9th Cir.2002); *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman),* 234 F.3d 1081, 1085 (9th Cir.2000).

■ "Justifiable reliance" is a subjective standard that takes into account the qualities and characteristics of the particular creditor and the circumstances of the particular case. *Field v. Mans*, 516 U.S. 59, 70–71, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995). In order for a representation regarding future performance to be actionable under § 523(a)(2)(A), a debtor must lack an intent to perform when the promise was made. *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1285 (9th Cir.1996). The debtor's knowledge and fraudulent intent may be shown by circumstantial evidence and inferred from the debtor's course of conduct. *Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58, 66 (9th Cir. BAP 1998). *Cf. Devers v. Bank of Sheridan (In re Devers)*, 759 F.2d 751, 753–54 (9th Cir.1985).

■ To prevail on a claim for actual fraud, Donaldson must establish that Hayes made a false representation in conjunction with the Agreement to purchase Boosters Plus on December 22, 1999. In the complaint, Donaldson claims that Hayes falsely represented an intention to pay Donaldson the balance due on the note and the balance due for the inventory.[4] Donaldson's testimony concerning Hayes' alleged representation is not corroborated by documentary evidence nor the testimony of any other witness. Hayes denies making any false representation to Donaldson, express or implied, with respect to either the note or inventory. Hayes testified that they had every intention of paying all amounts due to Donaldson at the time the Agreement was executed. Not only is the evidence of a representation colorable and conflicting, but Donaldson has not introduced sufficient evidence to support his assertion that Hayes had no intention of performing as promised at the time of the Agreement. *Kuan v. Lund (In re Lund)*, 202 B.R. 127, 131 (9th Cir. BAP 1996) (stating that the "debtor must make a promise while knowing it to be false at the time in order to support a nondischargeability action under 11 U.S.C. § 523(a)(2)(A)"); *Citibank (S.D.) N.A. v. Lee (In re Lee)*, 186 B.R. 695, 699 (9th Cir. BAP 1995) (stating that a mere failure to fulfill a promise to pay a debt is not fraudulent so as to render the debt nondischargeable, absent proof that the promise was made with the intent not to pay or knowing that payment would be impossible).

Neither Donaldson nor Hayes reasonably believed that payment of the note would be impossible. Hayes testified that they "planned on making the monthly payments out of the income generated by the business."[5] Donaldson considered Boosters Plus "a profitable business,"[6] and expected Hayes to pay "the balance due on the Note … *based on their ability to pay*

---

4. Donaldsons' complaint alleges that Hayes made the following misrepresentations to induce Donaldson to sell the business:

5. At the time of the sale, Defendants represented to Plaintiffs that they intended to pay Plaintiffs the balance due on the note and the balance due for the inventory.

6. Plaintiffs later learned that Defendants never intended to pay Plaintiffs the $225,000.00 due on the note nor the $11,960 due for the inventory and instead, intended to breach the agreement which they did on September 30, 2002, and also intended to keep the inventory for free which is evidenced by the fact that they never even paid one dollar for it, and reap the benefits of the profits of Plaintiff's business without paying Plaintiffs the amounts owed.

Donaldson's *Complaint to Determine Dischargeability of Debt*, p. 2, l.15–22.

5. *Declaration of Kristine Ortenzo Hayes in Support of Motion for Summary Judgment*, p. 2, l.16–17.

6. *Donaldson's Memorandum of Points and Authorities*, p. 2, l.4.

through this business as well as their other successful business Tumble Jungle...."[7] More importantly, Hayes would not have paid Donaldson the sum of $125,844.90 between December 22, 1999 and August 16, 2002, if Hayes had absolutely no intention of performing under the Agreement from its inception. It is undisputed that Hayes paid Donaldson the $12,000 down payment upon execution of the Agreement, and timely paid the $12,000 note on January 26, 2000. Neither party dispute the fact that by September 1, 2002, Hayes had paid Donaldson monthly note payments of $100,844.90, plus the down payment of $25,000, for a total of $125,844.90 pursuant to the Agreement.

With respect to the inventory, Donaldson contends that Hayes agreed to purchase Donaldson's remaining inventory on December 22, 1999, for $11,960. The only evidence of a representation by Hayes concerning the inventory is the following testimony by Donaldson:

> After we closed this transaction for them to purchase the business, Defendants asked me to leave certain inventory which amounted to almost $12,000.00. They assured me that we didn't have to amend the agreement and that they would pay me for the inventory.[8]

Again, Donaldson's testimony is not bolstered by documentary evidence nor the testimony of any other witness. Nor is there any evidence of actions taken by Donaldson after December 22, 1999, to either document the alleged oral agreement for the purchase of the inventory or to enforce its terms. Hayes denies any separate agreement with Donaldson for the purchase of inventory. Kristine Ortenzo Hayes testified that Donaldson prepared a list of inventory being transferred as part of the sale of the business, but stated there was no separate agreement regarding any additional payment for the inventory.[9] The court notes that inventory is not included in Exhibit "A" to the Agreement which specifically identifies the assets sold to Hayes on December 22, 1999.

While the parties dispute whether or not payment for the inventory was included in the Agreement, Donaldson has not introduced sufficient evidence to put at issue Hayes' intent at the time the alleged promise concerning inventory was made. There is simply insufficient evidence that Hayes made the alleged promise with the intent not to pay for the inventory or knowing that payment would be impossible, particularly in light of Hayes' efforts to make regular payments under the Agreement between December 22, 1999 and August 16, 2002.

Intent to deceive may be inferred when the totality of circumstances presents a picture of deceptive conduct by the debtor. *See Tallant,* 218 B.R. at 66. As further evidence of Hayes' intent to deceive, Donaldson alleges that Hayes never disclosed an intention to refinance their home to make the $12,000 down payment. Hayes claims that this intention was com-

---

7. *Donaldson's Memorandum of Points and Authorities,* p. 2, l.9–11 (emphasis added).

8. *Declaration of Joseph D. Donaldson in Opposition to Defendant's Motion for Summary Judgment,* p. 2, l.20–22.

9. *Declaration of Kristine Ortenzo Hayes in Support of Motion for Summary Judgment,* p. 2, l.11–13. Kristine Ortenzo Hayes attached to her declaration as Exhibit # 3 a document entitled "From Joe's Original Inventory: 3/22/01" which itemizes certain personal property valued at $11,960. However, Ms. Hayes did not authenticate Exhibit # 3 in her declaration, identify Exhibit # 3 as the list purportedly prepared by Donaldson, nor explain the date of March 22, 2001, shown on Exhibit # 3.

municated to Donaldson prior to execution of the Agreement. To the extent there may be an issue of fact concerning disclosure of the source of the down payment, the court does not consider it material. It is undisputed that Donaldson was timely paid the $12,000 down payment by Hayes, and there is nothing in the Agreement between the parties that purported to restrict Hayes' source of payment.

█ Finally, Donaldson asserts that Boosters Plus was sold to Hayes only on the condition that Hayes alone would operate the business.[10] According to Donaldson, Hayes had no intention of running Boosters Plus because he later discovered it "was being run by a sister, Beverly Ortenzo who," in Donaldson's opinion, "had absolutely no experience running this type of business. . . ."[11] However, it does not appear that this "condition" was sufficiently material to be incorporated into the Agreement. The Agreement contains no provision requiring Hayes to operate Boosters Plus.[12] Notwithstanding the absence of this condition, Donaldson signed the Agreement and sold the business to Hayes. Donaldson could not have justifiably relied on satisfaction of a condition that was not included in the fully integrated Agreement between the parties. Moreover, the summary judgment evidence reflects that Kristine Ortenzo Hayes, in fact, operated Boosters Plus between December 22, 1999 and September 30, 2002. While admitting that she hired her sister to work with her at Boosters Plus, Kristine Ortenzo Hayes testified she was in charge of operations at Boosters Plus while her husband, John Hayes, operated their other store, Tumble Jungle. She further testified that she quit her job at Tumble Jungle and devoted all of her efforts, at no compensation, to the success of Boosters Plus, stating, "I used my best efforts to make the business successful and to make the monthly payments to the Trust."[13]

Viewing the facts and the inferences to be drawn therefrom in a light most favorable to Donaldson, the court cannot find that the record taken as a whole demonstrates a genuine issue of material fact for trial. Donaldson cannot establish at least three essential elements of a § 523(a)(2)(A) claim, i.e., that (1) Hayes made a representation which Hayes knew was false at the time it was made; (2) Hayes made the false representation with the intention and purpose of deceiving Donaldson, and (3) justifiable reliance by Donaldson. Accordingly, Hayes is entitled to summary judgment on Donaldson's § 523(a)(2)(A) claim as a matter of law.

### D. Section 523(a)(6)

Alternatively, Donaldson argues that the claim against Hayes should be excepted

10. "At the time of the sale, Plaintiffs had a profitable business and only sold the business to the Defendants on the condition that they operate the business themselves because Defendants had expertise in the business, so Plaintiffs' could retire on the payments to be made by Defendants and Defendants were fully aware of this fact at the time of the sale." *Donaldson's Memorandum of Points and Authorities*, p. 2, l.4–7.

11. *Declaration of Joseph D. Donaldson in Opposition to Defendant's Motion for Summary Judgment*, p. 2, l.11–13.

12. Paragraph 16 of the Agreement states:

*Integration.* This Agreement constitutes the entire agreement between the parties with respect to the subject matter contained herein, and it supercedes all prior and contemporaneous agreements, representations, conditions, warranties and representations of the parties.

*Declaration of Kristine Ortenzo Hayes in Support of Motion for Summary Judgment*, Exhibit # 1, p. 11.

13. *Declaration of Kristine Ortenzo Hayes in Support of Motion for Summary Judgment*, p. 3, l.17–24.

from discharge as a "willful and malicious injury by the debtor to ... the property of another entity." 11 U.S.C. § 523(a)(6).

Section 523(a)(6) of the Bankruptcy Code excepts from discharge debts resulting from "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Section 523(a)(6) applies only to intentional torts, which "generally require that the actor intend the consequences of an act, not simply the act itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Generally, debts arising from intentional breaches of contract are not excepted from discharge under § 523(a)(6). *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir.1992). However, when an intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6). *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1205 (9th Cir.), *cert. denied*, 533 U.S. 930, 121 S.Ct. 2552, 150 L.Ed.2d 718 (2001); *Riso*, 978 F.2d at 1154.

Whether conduct is tortious is determined by state law. *See Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1000 (9th Cir.1999) ("While bankruptcy law governs whether a claim is nondischargeable under § 523(a)(6), this court looks to state law to determine whether an act falls within the tort of conversion."). Under California law, "[c]onduct amounting to a breach of contract becomes tortious only when it violates an independent duty arising from principles of tort law." *Jercich*, 238 F.3d at 1206, *quoting Applied Equip. Corp. v. Litton Saudi Arabia, Ltd.*, 7 Cal.4th 503,

28 Cal.Rptr.2d 475, 869 P.2d 454, 460 (1994).

Section 523(a)(6) requires separate findings on the issues of "willful" and "malicious." The "willful" injury requirement of § 523(a)(6) is met "when it is shown either that the debtor had a *subjective motive* to inflict injury *or* that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146–47 (9th Cir.2002) (emphasis added); *Jercich*, 238 F.3d at 1208. A "malicious injury" involves "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Jercich*, 238 F.3d at 1209. *See, e.g., Diamond*, 285 F.3d at 829 (holding that a state court jury finding that the debtors "intentionally caused injury" to the creditor "without just cause" was entitled to preclusive effect for purposes of § 523(a)(6)); *Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir.1997) (en banc) (stating that the four-part definition of "malicious injury" does not require a showing of biblical malice, *i.e.*, personal hatred, spite or ill-will).

Neither party disputes the fact that Hayes breached the Agreement with Donaldson. Donaldson claims that Hayes' breach of the Agreement was willful and malicious because Hayes "knew that my wife and I relied on these payments for our retirement, and [Hayes] had the clear ability to pay the payments, but instead, decided to steal the profits of the business and use the money for their own personal benefit rather than to pay me what was due under the promissory note." [14] Notwithstanding the discovery undertaken by the parties, Donaldson was unable to sub-

---

14. *Declaration of Joseph D. Donaldson in Opposition to Defendant's Motion for Summary* *Judgment*, p. 3, l.14–17.

mit any evidence to support a finding that Hayes sucked the profits out of Boosters Plus between December 22, 1999 and September 30, 2002, to pay personal expenses and to supplement Hayes' other business, Tumble Jungle.[15]

Donaldson also claims that Hayes willfully and maliciously "closed down the business without any notice and alienated the customer base...."[16] However, the evidence in support of Hayes' motion belies Donaldson's contention. It is undisputed that by September 1, 2002, Hayes had paid Donaldson monthly payments of $100,844.90, plus the down payment of $25,000, for a total of $125,844.90 pursuant to the Agreement. By letter dated September 30, 2002, Hayes advised Donaldson of the decision to close Boosters Plus and Hayes tendered the following assets of the business to Donaldson pursuant to the Agreement:

1. Business Name: Boosters Plus

2. Telephone Numbers: (909) 302–6407; (909) 302–6408; (800) 496–6287

3. Website Domain: *BoostersPlus@aol.com*

4. Customer List

5. Vendor List

6. Goodwill

Hayes included the customer list and vendor list in the letter, advised Donaldson that the vendors would be notified that Hayes was no longer using the name Boosters Plus, and requested Donaldson to provide instructions not later than October 10, 2002, with respect to a transfer of the phone numbers and website. Inexplicably, Donaldson failed to either respond to the letter or to make appropriate arrangements to take possession of the collateral. There is no evidence that Donaldson took any action after the September 30th letter to enforce the security interest or to mitigate damages. Indeed, it is undisputed that Donaldson took no action in response to Hayes' letter until December 12, 2002, when Donaldson filed a complaint against Hayes in the Superior Court of the State of California, County of Riverside, to recover damages for Hayes' alleged breach of the Agreement.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. In this case, Donaldson has failed to adduce evidence showing that Hayes either had a subjective motive to inflict injury on Donaldson or that Hayes' conduct was intentional, wrongful, and done without just cause or excuse. Because Donaldson is unable to establish the requisite elements of a § 523(a)(6) claim, summary judgment for Hayes is appropriate.

## III. CONCLUSION

There being no genuine issue as to any material fact for trial, the court finds that

---

**15.** Under paragraph 11(B) of the Agreement, Donaldson had the right to obtain quarterly and annual financial statements from Hayes regarding the business, assets, financial condition and operations of Boosters Plus between December 22, 1999 and September 30, 2002. *Declaration of Kristine Ortenzo Hayes in Support of Motion for Summary Judgment*, Exhibit # 1, p. 9–10. These documents may have substantiated Donaldson's claim that Hayes milked the net profits of the business, but none of this financial information was submitted by Donaldson in response to Hayes' motion for summary judgment. Indeed, there is no indication that Donaldson even sought this financial information from Hayes during the term of the Agreement.

**16.** *Declaration of Joseph D. Donaldson in Opposition to Defendant's Motion for Summary Judgment*, p. 3, l.18–19.

Hayes is entitled to a summary judgment as a matter of law denying Donaldson relief under § 523(a)(2)(A) and § 523(a)(6).

A separate judgment will be entered consistent with this opinion.