53 P.3d 191

**UNIVERSAL MARKETING AND ENTERTAINMENT, INC., a Nevada corporation, Plaintiff–Appellant,**

v.

**BANK ONE OF ARIZONA, N.A., formerly known as Valley National Bank, Defendant–Appellee.**

No. 1 CA–CV 01–0004.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 29, 2002.

Cochran & Dahl, P.C. By Jerry L. Cochran, Phoenix, Attorneys for Plaintiff–Appellant.

Mariscal, Weeks, McIntyre & Friedlander, P.A. By Timothy J. Thomason, Michael J. Plati, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

FIDEL, Judge.

¶ 1 When a judgment creditor, after initiating a garnishment against the unrestricted bank account of its judgment debtor, is informed that the judgment debtor does not own the bulk of the funds within the account and merely holds them to accomplish a transaction on behalf of another, does the creditor subject itself to liability for conversion if it completes the garnishment and refuses to return the funds to their asserted owner? We answer that question in this appeal.

### BACKGROUND

¶ 2 Universal Marketing and Entertainment, Inc., appeals from a judgment dismissing its conversion complaint against Bank One of Arizona, N.A., for failure to state a claim upon which relief may be granted. *See* Ariz. R. Civ. P. 12(b)(6). On appeal from dismissal for failure to state a claim, we take all allegations of the complaint as true and resolve all inferences of fact in favor of the plaintiff. *Fidelity Sec. Life Ins. Co. v. State Dep't of Ins.*, 191 Ariz. 222, 224, ¶ 4, 954 P.2d 580, 582 (1998). A court should not dismiss a complaint pursuant to Rule 12(b)(6) "unless it appears certain that the plaintiff would not be entitled to relief under any state of facts susceptible of proof under the

claim stated." *Sun World Corp. v. Penny-saver, Inc.,* 130 Ariz. 585, 586, 637 P.2d 1088, 1089 (App.1981).

¶ 3 Universal sued Bank One on the single theory of conversion. The subject of its claim was a $50,000 deposit that Universal had made by wire into an unrestricted Bank of America account belonging to non-party Roy Wensel. The funds, though not segregated in Wensel's account, were intended by Universal as a loan to non-party SuperBull, Inc., a company that Universal was undertaking with Wensel's assistance to acquire. Wensel, serving in effect as an escrow agent in the loan transaction, was to release the funds to SuperBull by drawing a cashier's check on his account in exchange for SuperBull's loan agreement and signed note to Universal.

¶ 4 Before Wensel could accomplish this transaction, his Bank of America account was garnished by Wensel's judgment creditor, Bank One. And though Universal and Wensel then advised Bank One in writing that $50,000, the bulk of the funds in the account, belonged to Universal, Bank One proceeded with the garnishment, obtained a $50,759.45 judgment, and refused to accede to Universal's demand to return its funds. Bank One did not add Universal as a party defendant in the garnishment proceeding, nor did Universal seek to intervene. In denying Wensel's objection to the garnishment, the trial court explained, "The Bank of America account in question is solely in the name of Roy Wensel and Cynthia Wensel. Only the Wensels have control and access to the account, and it has not been shown to the satisfaction of this Court that the monies in the account belong to another person."

¶ 5 Universal contends that, by taking control of Universal's $50,000 and refusing to return it, Bank One converted Universal's funds to its own use. We uphold the dismissal of Universal's claim because we conclude that a conversion action does not lie against Bank One, the holder of a valid judgment against Wensel, for the garnishment of unsegregated funds that Universal deposited into Wensel's unrestricted bank account.

## WERE THE FUNDS SUBJECT TO CONVERSION?

¶ 6 Arizona has adopted the definition of conversion contained in the Restatement (Second) of Torts § 222A(1) (1965):

[a]n intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.

*See Focal Point, Inc. v. U–Haul of Ariz., Inc.,* 155 Ariz. 318, 319, 746 P.2d 488, 489 (App.1986). The proper plaintiff in a conversion action is one "who had the right to immediate possession of the chattel at the time of the alleged conversion." *Sears Consumer Fin. Corp. v. Thunderbird Prods.,* 166 Ariz. 333, 335, 802 P.2d 1032, 1034 (App.1990) (citing Restatement (Second) of Torts § 243 cmt. b and W. Page Keeton, et al., *Prosser and Keeton on the Law of Torts* § 15 (5th ed.1984)).

¶ 7 At the time of the alleged conversion in this case, the party with the "immediate right to possession of the chattel" was not Universal but Bank of America. This is so because the chattel in question consisted exclusively of unsegregated money that Universal had deposited into Wensel's general bank account. In making this deposit, Universal made the funds the property of Bank of America, giving rise to a debt that Bank of America owed to Wensel.

¶ 8 The character of a bank deposit and its susceptibility to conversion were well summarized by the Texas Court of Appeals:

An action for conversion must be supported by title in the plaintiff and there must be a means of identification of it as a specific chattel for it to constitute the subject of conversion. A suit for conversion will not lie where a debtor-creditor relationship is created by deposit of a check to the depositor's account.... *The making and acceptance of an ordinary deposit creates, as between the bank and the depositor, the relation of debtor and creditor, the title to the money passing to the bank.*

*Houston Nat'l Bank v. Biber,* 613 S.W.2d 771, 774 (Tex.Civ.App.1981) (emphasis added) (citations omitted).

¶ 9 Elaborating on the means of identifying funds as a specific chattel, the Texas court observed that an action for conversion of money would lie where the money was "deposited in a bank under a special deposit agreement having the characteristics of a bailment contract" or "where it is delivered for safe keeping, to which the keeper claims no title and which money is required and intended to be kept segregated, substantially in the form in which it was received or as an intact fund." *Id.* at 774–75.

¶ 10 The Supreme Court of Virginia similarly distinguished, in the comparable context of susceptibility to set off, between funds made the subject of a special deposit with notice to the bank and those, as in this case, deposited into an unrestricted general account:

> The general rule is that " 'the relation between a general depositor and the bank in which his deposit is made is simply that of debtor and creditor. The moneys deposited immediately become the property of the bank, and the latter becomes debtor of the depositor....' " Thus, the bank has "a right of set off of any debt due it by the depositor against such deposit." ... However, when funds are deposited for a special purpose with notice to the bank, the deposit does not become the property of the bank and the right of set-off does not exist.

*Bernardini v. Cent. Nat'l Bank of Richmond,* 223 Va. 519, 290 S.E.2d 863, 864 (1982) (citations omitted).

¶ 11 Arizona law has long been to the same effect. *See Ellery v. Cumming,* 40 Ariz. 512, 515, 14 P.2d 709, 710–11 (1932) (distinguishing segregated or special funds from a general deposit; the owner of a bank account containing the latter holds only a chose in action—a general claim to recover funds from the bank—and not a specific fund of money that can be converted); *Hennesy Equip. Sales Co. v. Valley Nat'l Bank,* 25 Ariz.App. 285, 287, 543 P.2d 123, 125 (1975)

("It is therefore somewhat fallacious to speak in terms of the bank paying its money or the depositor's money, all the money as such belongs to the bank and the bank is merely discharging its debt to the depositor, pro tanto, by payment of the depositor's checks.").

¶ 12 The money in this case was not deposited with Bank of America "for a special purpose with notice to the bank." *Bernardini,* 290 S.E.2d at 864. Nor was it deposited under any "special deposit agreement having the characteristics of a bailment." *Biber,* 613 S.W.2d at 775. When Universal wired money to Wensel's account at Bank of America, neither Universal nor Wensel sought, as they might have done, to establish a segregated account for the funds. Instead of being asked to hold the money in the form of a distinct and identifiable instrument, Bank of America merely received a wire transfer of undifferentiated dollars to be credited directly to Wensel's and his wife's existing "business account." [1] Although the $50,000 deposit was the bulk of the money in the account, it was commingled with other, lesser, funds, and Bank of America had neither notice nor obligation to differentiate it from other money that Wensel had deposited into the account.

¶ 13 We recognize, of course, that the issue in this case is not whether *Bank of America* converted Universal's money but whether *Bank One* did so by carrying the garnishment forward after learning that Universal claimed to own the funds. This does not, however, change the analysis. The question remains whether the money constituted a chattel in which Universal had an immediate right to possession at the time of the conversion, and our answer is that it did not. Universal relinquished such an interest when it deposited the funds, unsegregated and undifferentiated, into Wensel's ordinary account.

¶ 14 Upon this deposit, as we have indicated, the funds became the property of Bank of

---

1. Although Wensel referred to the account in correspondence as both "my business account" and "my account," we can conclude from the garnishment proceedings that it was not a corporate account. The trial court found in the garnishment proceedings that the account was "solely in the name of Roy Wensel and Cynthia Wensel"; and the court entered judgment that "Bank of America ... was indebted to Defendant/Judgment Debtor, Roy Wensel for nonexempt monies at the time the Writ was served."

America. The deposit gave rise to Bank of America's $50,000 debt to Wensel, a debt that Bank of America could discharge by paying Wensel's checks. *See Hennesy,* 25 Ariz.App. at 287, 543 P.2d at 125. And though the deposit also gave rise to Wensel's $50,000 debt to Universal (a debt that Wensel could satisfy by paying that sum on Universal's behalf to SuperBull), this latter debt, whatever rights it gave Universal against Wensel, neither exempted Bank of America's debt to Wensel from garnishment by a Wensel creditor nor entitled Universal to a superior position if a garnishment should occur. *See Ellery,* 40 Ariz. at 518, 14 P.2d at 711 ("Unquestionably a garnishment confers superior rights as against other creditors of the *judgment debtor.*").

¶ 15 Universal relies, in arguing the contrary, upon the following general statement in *Autoville, Inc. v. Friedman,* 20 Ariz.App. 89, 91, 510 P.2d 400, 402 (1973) (citation omitted):

> At early common law there was some question as to whether money could be the subject of a conversion because of its lack of specific identification. However, the modern rule, in which Arizona joins, is that money can be the subject of a conversion provided that it can be described, identified or segregated, and an obligation to treat it in a specific manner is established.

According to Universal, the funds in this case can be sufficiently "described, identified or segregated" and "an obligation to treat [them] in a specific manner" can be sufficiently established to qualify them as money subject to conversion. The decision in *Autoville,* however, does not support Universal's position. Instead, it reinforces the proposition that an action for conversion will not lie for money that is simply a debt.

¶ 16 In *Autoville,* the plaintiff had financed the defendant dealer's purchase of used automobiles that the dealer would sell from its lot, remitting the proceeds to the plaintiff. *Id.* at 90–91, 510 P.2d at 401–02. When,

after selling the cars, the dealership owners closed the business and declined to remit the sale proceeds, the plaintiff sued them for conversion, claiming that the owners had converted the proceeds by appropriating them to their own use. *Id.* This court concluded, however, that the plaintiff had not established a "possessory interest in the proceeds of the sale of the various vehicles he financed so as to support an action for conversion." *Id.* at 93, 510 P.2d at 404. The court explained,

> [T]he sale itself was merely the triggering device which brought into existence the obligation of Autoville to pay its debt. This debt was to be paid from the proceeds of the sale, this being the primary source of Autoville's income, but there is no evidence to support a finding that this debt could not have been discharged from a source other than the sale proceeds. In this regard, defendants correctly contend that *conversion does not lie to enforce the mere obligation to pay a debt which may be discharged by the payment of money generally.* In our opinion, *the agreement between the parties merely created the relationship of debtor and creditor.*

*Id.* at 92–93, 510 P.2d at 403–04 (emphasis added) (citations omitted);[2] *accord Stokes v. Stokes,* 143 Ariz. 590, 594, 694 P.2d 1204, 1208 (App.1984).

## CONCLUSION

¶ 17 Devices were readily accessible to Universal and Wensel for segregating and protecting Universal's $50,000 deposit. A deposit into a special account entitled "Wensel ITF (in trust for) Universal," for example, would have put Bank of America and any third-party creditors on notice that the funds constituted a *res* in which Universal had a beneficial interest.

¶ 18 Instead, Universal chose to place its deposit on Bank of America's books as part of the account debt that Bank of America

---

**2.** Distinguishing one vehicle that the plaintiff owned and had consigned to the dealership for sale, the *Autoville* court did find a conversion in that instance. Because the dealership had received the vehicle in a fiduciary capacity, the court explained, the dealership received the pro-

ceeds from its sale in the same capacity and could exercise no authority over the proceeds except for the benefit of the owner. 20 Ariz.App. at 93, 510 P.2d at 404; *accord Sterling Boat Co. v. Ariz. Marine, Inc.,* 134 Ariz. 55, 57–58, 653 P.2d 703, 705–06 (App.1982).

owed Wensel on his personal account. Thus unprotected, the entire account debt became fair game for any creditor of Wensel. Enter Bank One. Bank One's first notice of Universal's claim to the bulk of Wensel's account came after garnishment process had been issued and served. To recognize post-garnishment claims of that sort would open a means of payment avoidance that would poorly serve both the debt-collection and the banking systems.

¶ 19 Because Bank One did not commit the tort of conversion against Universal, the trial court correctly found that Universal's complaint did not state a claim on which relief could be granted. Universal's remedy, if any, is against Wensel. The dismissal is affirmed.

CONCURRING: ANN A. SCOTT TIMMER, Presiding Judge, and JOHN C. GEMMILL, Judge.