**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GLENN LOCKERBY,
　　　　　*Plaintiff-Appellee,*

　　　　v.

ALEXANDER L. SIERRA,
　　　　　*Defendant-Appellant.*

No. 06-15928

D.C. No.
CV-03-00578-CKJ

OPINION

Appeal from the United States District Court
for the District of Arizona
Cindy K. Jorgenson, District Judge, Presiding

Argued and Submitted
March 10, 2008—Phoenix, Arizona

Filed August 7, 2008

Before: Michael Daly Hawkins, Sidney R. Thomas, and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Hawkins

10021

## COUNSEL

Alexander L. Sierra, Pro Se, Tucson, Arizona, for the defendant-appellant.

Walter F. Wood, Walter F. Wood, Ltd., Tucson, Arizona, for the plaintiff-appellee.

## OPINION

HAWKINS, Circuit Judge:

Sierra appeals the district court's order and judgment affirming the bankruptcy court's determination that Lockerby's breach of contract claim against Sierra was non-dischargeable under 11 U.S.C. § 523(a)(6). We hold that an intentional breach of contract cannot give rise to non-dischargeability under § 523(a)(6) unless it is accompanied by conduct that constitutes a tort under state law.

## FACTUAL AND PROCEDURAL HISTORY

Sierra was Lockerby's attorney in a previous matter. When Lockerby sued Sierra for malpractice, the parties entered into

a settlement agreement, in which Sierra assigned to Lockerby 50% of the attorney's fees from the proceeds of four of Sierra's then-pending personal injury cases. Concluding for himself that Lockerby did not have a legitimate malpractice action, Sierra decided to breach the settlement agreement. After Sierra filed a Chapter 7 Petition, Lockerby filed a complaint seeking to except his pre-petition claim for the breach of the settlement agreement from discharge under 11 U.S.C. § 523(a)(4) and (6).

The bankruptcy court concluded the claim failed under § 523(a)(4)[1] because the parties were not in a fiduciary relationship with respect to the settlement agreement, but also concluded that the debt was nondischargeable as arising from "willful and malicious injury" under § 523(a)(6) because Sierra possessed the "subjective intent of harming Lockerby." Relying on the bankruptcy court's finding that Sierra's conduct constituted intentional harm "without any legitimate cause," the district court affirmed. Citing *Petralia v. Jercich* (*In re Jercich*), 238 F.3d 1202, 1205 (9th Cir. 2001), the district court expressly concluded that tortious conduct was not required for a claim under § 523(a)(6). Sierra timely appealed.

## STANDARD OF REVIEW

We "review the bankruptcy court's conclusions of law de novo and its factual findings for clear error." *Carillo v. Su* (*In re Su*), 290 F.3d 1140, 1142 (9th Cir. 2002). "Whether a claim is nondischargeable presents mixed issues of law and fact and is reviewed de novo." *Id.*

---

[1]Section 523(a)(4) renders nondischargeable debt for fraud while acting in a fiduciary capacity.

## DISCUSSION

### 1. Tortious Conduct Requirement

**[1]** Debtors who file for bankruptcy under Chapter 7 are normally entitled to discharge unsecured debts. Certain types of debt may not be discharged, including any debt "for willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6).

**[2]** We begin from the proposition that tortious conduct is a required element for a finding of nondischargeability under § 523(a)(6). *Jercich*, 238 F.3d at 1205 ("[a]n intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful *tortious conduct*.") (emphasis in *Jercich*). The *Jercich* court undertook a two-part inquiry to determine whether the breach of contract rendered the debt excepted from discharge, first examining whether the debtor's conduct was "tortious," and then asking whether the debtor's conduct was both "willful" and "malicious." *See id.* at 1206-09.

**[3]** *Jercich* holds that liability for a breach of contract need not be wholly independent from liability for the tort in order for the tortious conduct to give rise to nondischargeability under § 523(a)(6). *Id.* at 1206. *Jercich* rejects a definition of tortious conduct that would permit a finding of nondischargeability under § 523(a)(6) only "if the conduct at issue would be tortious even if a contract between the parties did not exist." *Id.* at 1204. But far from doing away with the tortious conduct requirement, *Jercich* affirms it. *Id.* at 1206 ("We . . . hold that to be excepted from discharge under § 523(a)(6), a breach of contract must be accompanied by some form of 'tortious conduct' that gives rise to 'willful and malicious injury.' ").[2]

---

[2]Several other cases confirm that tortious conduct is a required element for a finding of willful and malicious conduct. *See, e.g.*, *Peklar v. Ikerd*

The Supreme Court's reasoning in *Kawaauhau v. Geiger* also appears to mandate a tortious conduct requirement. 523 U.S. 57, 62 (1998). Although the holding there was limited to a determination that only intentional torts, rather than negligent or reckless acts, can constitute willful and malicious injury, the Court affirmed the Eighth Circuit's holding that "523(a)(6)'s exemption from discharge . . . is confined to debts 'based on what the law has for generations called an intentional tort.' " *Id.* at 60 (*citing Geiger v. Kawaauhau (In re Geiger)*, 113 F.3d 848, 852 (8th Cir. 1997) (en banc)). The Supreme Court noted that "[i]ntentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself,' " *id.* at 61-62 (quoting Restatement (Second) of Torts § 8A, cmt. a, at 15 (1964) (emphasis in *Geiger*)), and then rejected the expansion of § 523(a)(6) to "a wide range of situations in which an act is intentional, but injury is unintended." *Id.* at 62. The Court then specifically rejected the notion that a "knowing breach of contract" could trigger exception from discharge under § 523(a)(6). *Id.*

Something more than a knowing breach of contract is required before conduct comes within the ambit of § 523(a)(6), and *Jercich* defined that "something more" as tortious conduct.

---

(*In re Peklar*), 260 F.3d 1035, 1038 (9th Cir. 2001) (citing bankruptcy cases that hold § 523(a)(6) is limited to intentional torts); *Del Bino v. Bailey (In re Bailey)*, 197 F.3d 997, 1001-02 (9th Cir. 1999) (considering whether act constitutes tort of conversion in determining nondischargeability under § 523(a)(6)); *Snoke v. Riso (In re Riso)*, 978 F.2d 1151, 1154 (9th Cir. 1992) ("It is well settled that a simple breach of contract is not the type of injury addressed by § 523(a)(6)") (citing bankruptcy case holding that "debts that are excepted from discharge under § 523(a)(6) relate solely to tortious liabilities")). Other bankruptcy courts within this Circuit have also held that intentional breaches of contract cannot give rise to dischargeability under § 523(a)(6). *See, e.g.*, *Donaldson v. Hayes (In re Hayes)*, 315 B.R. 579, 590 (Bankr. C.D. Cal. 2004) (Section 523(a)(6) "applies only to intentional torts . . . when an intentional breach of contract is accompanied by tortious conduct which results in willful and malicious injury, the resulting debt is excepted from discharge under § 523(a)(6)").

## 2. Definition of Tortious Conduct

**[4]** Contrary to Lockerby's argument, conduct is not tortious under § 523(a)(6) simply because injury is intended or "substantially likely to occur," but rather is only tortious if it constitutes a tort under state law. *See Jercich*, 238 F.3d at 1206 ("To determine whether Jercich's conduct was tortious, we look to California state law."); *Bailey*, 197 F.3d at 1000 ("While bankruptcy law governs whether a claim is nondischargeable under § 523(a)(6), this court looks to state law to determine whether an act falls within the tort of conversion.").[3]

**[5]** This approach is consistent with basic principles of tort and contract law. Historically, injuries resulting from breaches of contract are treated very differently from injuries resulting from torts. In contract law, "[t]he motive for the breach commonly is immaterial in an action on the contract." *Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 547 (1903) (Holmes, J.). The concept of "efficient breach" is built into our system of contracts, with the understanding that people will sometimes intentionally break their contracts for no other reason than that it benefits them financially. The definition of intent to injure as the commission of an act "substantially certain" to cause harm was born from *tort* principles, not contract law principles. Restatement (Second)

---

[3]*See also Hayes*, 315 B.R. at 590 ("Whether conduct is tortious is determined by state law."); *Communications Workers of America v. Allen* (*In re Allen*), 75 B.R. 742, 746 (Bankr. C.D. Cal. 1987) ("Neither the legislative history nor case precedent justify expanding [§ 523(a)(6)] to include garden variety breaches of contract . . . . A foreseeable injury . . . may have resulted from Debtor's conduct, but it is not 'malicious' in the sense that it warrants exception from discharge."). Although *Banks v. Gill Dist. Ctrs.* (*In re Banks*) upholds a finding of nondischargeability for breach of a settlement agreement, the case deals only with the "intent to injure" requirement, and does not discuss whether the conduct meets the "tortious conduct" requirement. 263 F.3d 862, 869 (9th Cir. 2001). However, the *Banks* court also recognizes that tortious conduct is required, and cites *Jercich* as holding that a nondischargeability finding is appropriate where conduct "rose to the level of tort." *Id.* at 869 n.6.

of Torts, § 8A, cmt. b (1965) ("If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.").

The Supreme Court's reasoning in *Geiger* also supports this conclusion. 523 U.S. at 62. That the Supreme Court in *Geiger* assumed that § 523(a)(6) encompassed only intentional torts, not intentional breaches of contract, strongly suggests the Court would not approve of a definition of "tortious conduct" that would include intentional breaches of contract whenever it is substantially certain that the breach will cause injury.

**[6]** Conflating tortious conduct with intent to injure also conflicts with core principles of bankruptcy law and its underlying legislative scheme. A fundamental policy of bankruptcy law is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934) (citation omitted). Expanding the scope of § 523(a)(6) to include contracts that are intentionally breached whenever it is substantially certain that injury will occur would severely circumscribe the ability of debtors to "start afresh."

**[7]** Such an interpretation would conflict not only with the "fresh start" policy at the heart of the Bankruptcy Code, but also with the statutory scheme itself. The Bankruptcy Code expressly permits intentional breaches of contract that are substantially certain to result in injury. Under 11 U.S.C. § 365(a), bankruptcy trustees are permitted to reject executory contracts and unexpired leases that do not produce a benefit for the debtor's estate. Section 365(g) expressly refers to this rejection as a *breach*. Courts must interpret various sections of a statute as consistent with one another in order to comport with legislative purpose. *See Kokoszka v. Belford*, 417 U.S. 642, 650 (1974). Since the Code expressly permits intentional breaches of contract (making no qualifications with respect to

the motive of the breaching party), it would be inconsistent to interpret § 523(a)(6) to render nondischargeable debts stemming from intentional breaches substantially certain to cause injury.[4]

### 3. Tortious Conduct Under Arizona Law

Having determined that state-specific tortious conduct is required under § 523(a)(6), we can only affirm the district court if Sierra engaged in conduct that would constitute a tort under Arizona law. *See Jercich*, 238 F.3d at 1206; *Bailey*, 197 F.3d at 1000.

In *Jercich*, the court held that the breach of contract violated California law because, in California, tort recovery was permitted when "in addition to the breach of the covenant [of good faith and fair dealing] a defendant's conduct violates a fundamental public policy of the state." 238 F.3d at 1206. At issue was a *state court* judgment awarding *punitive damages* for the nonpayment of employee wages despite ability to pay. *Id.* at 1204. The state trial court had concluded that this intentional nonpayment was "willful and deliberate" and "constituted substantial oppression" under California law. *Id*. The state trial court also emphasized California courts' strong policy regarding employers' obligation to pay their employees. *Id.* at 1206-07. The *Jercich* court based its finding of "tortious conduct" on the state court findings of oppression and the public policy violation, finding that the conduct was tortious under state law. *Id.* The *Jercich* court also emphasized that "[w]ages are not ordinary debts." *Id.* at 1207.

[8] The conduct at issue here involves an "ordinary debt,"

---

[4]While an intentional breach of contract followed by a bankruptcy filing may strike us as unfair, bankruptcy law already wards against system-gaming, for example, by rendering non-dischargeable purchases for "luxury" items made within ninety days of bankruptcy filing. 11 U.S.C. § 523(a)(2)(C)(i)(I).

and the conduct would not be tortious under Arizona law. Sierra decided not to pay Lockerby, thereby breaching the settlement agreement; in doing so, he knew that this action would injure Lockerby. Lockerby does not even allege that Sierra engaged in tortious conduct, instead asserting, "[w]hile a simple breach of contract may not be the basis for an exception to discharge, absent more, an intentional breach of contract provides the *more* that is necessary when it is accompanied with knowledge that a person is bound by an agreement and without just cause chooses to ignore it with consequent harm to the [other] party."

[9] However, there is no indication that lack of just cause alone renders a breach of contract tortious under the law of Arizona (or any state, for that matter). Again, parties often breach contracts simply because it is to their financial benefit. Such a reason may not be "just," but that does not render it tortious. Sierra's breach of contract would not give rise to a tort action under Arizona law, and it is not "willful and malicious" under § 523(a)(6).[5]

---

[5]Lockerby does not allege any specific tort, such as a breach of good faith and fair dealing, but the breach would not constitute this tort under Arizona law in any event. In Arizona, "no tort claim for breach of good faith and fair dealing is cognizable . . . outside of the insurance context unless it involves a violation of public policy." *Nelson v. Phoenix Resort Corp.*, 888 P.2d 1375, 1383 (Ariz. Ct. App. 1994). No violation of public policy has been alleged here. Arizona law also constrains tort recovery for breach of good faith and fair dealing to situations in which "there is a 'special relationship arising from elements of public interest, adhesion, and fiduciary responsibility.' " *Enyart v. Transamerica Ins. Co.*, 985 P.2d 556, 561 (Ariz. Ct. App. 1998) (citing *Burkons v. Ticor Title Ins. Co. of Cal.*, 813 P.2d 710, 720 (Ariz. 1991)). These "special relationships" include "those undertaken for something more than or other than commercial advantage, such as the procurement of service, professional help, security, or other intangibles." *Id.* Although Sierra was Lockerby's lawyer, the parties did not enter the settlement agreement in a lawyer-client relationship. The bankruptcy court also concluded that the settlement agreement was insufficient to create a fiduciary relationship within the meaning of § 523(a)(4). Accordingly, no special relationship existed that would give

## CONCLUSION

A breach of contract is not "willful and malicious conduct" under § 523(a)(6) unless accompanied by conduct that would give rise to a tort action under state law. We **REVERSE** the district court's decision, **VACATE** the judgment of the Bankruptcy Court, and **REMAND** for further proceedings. Each party shall bear its own costs on appeal.

---

rise to a tort claim for a breach of the covenant of good faith and fair dealing—even if such a breach were alleged. Lockerby also does not allege that Sierra's conduct amounts to the tort of conversion, and, in any event, the conduct would not constitute conversion under Arizona law. "[A]n action for conversion will not lie for money that is simply a debt." *Universal Mktg. and Ent., Inc. v. Bank One of Arizona*, 53 P.3d 191, 195 (Ariz. Ct. App. 2002). If the money that Sierra owed Lockerby was the proceeds of the sale of an item in which Lockerby held a possessory interest, a conversion action would lie. *See id.* However, Lockerby has not alleged that the settlement agreement gives him a possessory interest in the proceeds of the four cases specified in the agreement.