FILED

2/19/2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   NV-13-1146-TaJuKi |
| | ) | |
| VINH CHAU and LANG MACH, | ) | Bk. No.   12-19953-MKN |
| | ) | |
| Debtors. | ) | Adv. No.  12-01307-MKN |
| _____ | ) | |
| | ) | |
| CLARA BUENAVENTURA, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| VINH CHAU; LANG MACH, | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on January 24, 2014
at Las Vegas, Nevada

Filed - February 19, 2014

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Mike K. Nakagawa, Chief Bankruptcy Judge, Presiding

_____

Appearances:    Thomas F. Christensen of Christensen Law Offices, LLC argued for appellant Clara Buenaventura; A.J. Kung of Kung & Brown argued for appellees Vinh Chau and Lang Mach.

_____

Before:  TAYLOR, JURY, and KIRSCHER, Bankruptcy Judges.

_____

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

1

Judgment creditor Clara Buenaventura ("Creditor") appeals the order of the bankruptcy court dismissing with prejudice her adversary complaint against chapter 7[1] debtors Vinh Chau ("Chau") and Lang Mach ("Mach," and together with Chau, "Debtors") under Civil Rule 12(b)(6).  We AFFIRM.

## FACTS

In November 2006, Creditor's husband, Benjamin Buenaventura, died as a result of injuries he sustained in a head-on automobile collision.  Chau caused the accident, as driver of a vehicle owned by Mach.  Creditor, along with others,[2] sued Debtors in 2007, based on negligence theories, for the wrongful death of her husband ("State Court Action").  She obtained a judgment after a jury trial held in 2012 ("Judgment").[3]

Debtors' insurance policy with Western United Insurance Company, dba AAA Insurance Company ("AAA"), included bodily injury liability limits of $100,000 per person.  In late 2006,

---

[1]  Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2]  Mrs. Buenaventura, individually and as representative of Benjamin Buenaventura's estate, along with Mr. Buenaventura's children and heirs, obtained the Judgment in an action initiated in the Eighth District Court, Clark County, Nevada ("State Court").

[3]  The Judgment, in excess of $500,000, was granted in favor of all the plaintiffs.  For ease of reference, and based on the fact that Creditor is the only named plaintiff in the adversary proceeding at issue in this appeal (the Adversary Proceeding), we define Creditor simply as Mrs. Buenaventura.

prior to filing a wrongful death action in State Court, Creditor's counsel made a policy limits demand on AAA, requiring payment within two weeks. AAA did not pay the policy limits at that time. In 2008, AAA filed a complaint in the United States District Court in Nevada[4] ("Federal Court"), seeking declaratory relief regarding the insurance policy ("Federal Court DRA"). The Federal Court entered an Order on July 15, 2010, granting AAA's motion for summary judgment (the "Summary Judgment Order") and concluding that AAA's "liability under the insurance policy is fixed at $100,000 and [AAA's] failure to settle within the time limit set by [Creditor] does not constitute bad faith under Nevada law." See Adv. Dkt. #8, Ex. 1.

Creditor was not named as a party to the Federal Court DRA, although she was allowed to intervene and she filed papers in opposition to AAA's motion for summary judgment. She appealed from the Summary Judgment Order. The Ninth Circuit, however, dismissed her appeal based on lack of standing.[5]

Creditor attempted to execute on the Judgment. Her efforts included seeking judicial assignment in the State Court Action of any possible insurance bad faith claims or malpractice claims. On August 27, 2012, Hon. Rob Bare, the judge in the State Court

---

[4] Case No.: 08-cv-00827-GMN-LRL, captioned as AAA Nevada Insurance Company v. Vinh Chau, et al.

[5] During the pendency of this appeal, and after dismissal of her appeal by the Ninth Circuit in the Federal Court DRA, Creditor moved for reconsideration of the Summary Judgment Order in the Federal Court. We take judicial notice of the order signed on November 26, 2013 by Hon. Robert C. Jones in case 2:08-cv-00827, which struck the Summary Judgment Order (the "2013 Order"). See BAP Dkt. #24.

3

Action, verbally ordered judicial assignment of Debtors' "insurance bad faith claim" and "any and all legal claims they may have, including a potential attorney malpractice case," in full satisfaction of the Judgment.  Adv. Dkt. #21, Ex. 3.

The following day, August 28, 2012, Debtors filed for protection under chapter 7.  The Debtors included neither insurance bad faith claims nor any potential attorney malpractice claims in their schedules.  They disclosed, however, the existence of the pending litigation by Creditor against Debtors and AAA in State Court regarding "insurance proceeds" in response to question 4a in their statement of financial affairs.[6] Thirteen days later, and weeks before the first meeting of creditors, Debtors filed an amended schedule B ("Amended Schedule B") and amended statement of financial affairs.  In their Amended Schedule B, Debtors included the following as "Other personal property of any kind not already listed," valued at $0.00:

> Potential Attorney malpractice case:  Debtors do NOT believe this to be an asset as they do NOT believe their attornies (sic) committed any malpractice. However, Debtors have provided this amendment pursuant to the request of Attorney Tom Christensen (Counsel for the Bonaventuras (sic)) who has advised Debtors (sic) counsel that he belives (sic) this to be an asset of the Chaus.

> Potential Bad Faith Claim:  Debtors do NOT believe they have a bad faith claim.  They take this position because among other reasons the Federal Court in case number 08-00827 GMN has ruled the same.  Additionally, Debtors do not believe that their insurance company has acted in bad faith.  However, Debtors have provided this amendment pursuant to the request of Attorney Tom

---

[6]  We have taken judicial notice of the bankruptcy schedules.  See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989) (reviewing court may take judicial notice of underlying bankruptcy documents).

4

Christensen (Counsel for the Bonaventuras (sic)) who has advised Debtors (sic) counsel that he belives (sic) this to be an asset of the Chaus.

After Debtors filed the Amended Schedule B, Creditor filed multiple motions in the bankruptcy case, seeking access or control over the potential insurance bad faith and legal malpractice claims. Despite notice of these motions, and the allegations raised therein, the chapter 7 trustee ("Trustee") filed a report of no distribution in the case.[7]

On November 27, 2012, Creditor filed a complaint seeking to obtain a nondischargeable judgment against the Debtors under § 523(a)(2)(A) and (a)(6), and denial of their discharges under § 727(a)(2) (the "Complaint"), initiating the Adversary Proceeding. Generally, the Creditor alleges that Debtors committed fraud by colluding with AAA to obtain the Federal Court DRA in 2010, filed bankruptcy with the intent to discharge the Judgment and destroy potential bad faith claims, and concealed insurance bad faith claims and legal malpractice claims by failing to schedule them in their initial schedules.

Debtors filed a Motion to Dismiss and for Award of Attorneys Fees and Costs,[8] seeking dismissal of the Complaint pursuant to

---

[7] Thereafter, Creditor sought a 2004 examination of the Debtors. In response, Debtors moved for a protective order, which the bankruptcy court granted ("Protective Order"). In footnote 5 of the Protective Order, the bankruptcy court included a quotation from the Federal Court, observing Creditor's counsel's modus operandi in this and other similar cases and "what appear to be attempts to set up a bad faith claim." Bk. Dkt. #75 at 6 n.5.

[8] Creditor also filed another motion in the bankruptcy
(continued...)

5

Civil Rule 12(b)(6) ("MTD") for failure to state a claim upon which relief can be granted. Creditor filed an opposition to the MTD ("Opposition") and requested leave to amend the Complaint pursuant to Civil Rule 15(a)(2) if the bankruptcy court found the Complaint insufficiently pled.

The bankruptcy court took the matter under submission after hearing oral arguments and entered a memorandum decision along with a separate order on March 13, 2013 ("MTD Order"). The bankruptcy court granted the MTD with prejudice and denied the request for an award of attorneys fees. Creditor timely filed a notice of appeal from the MTD Order only as to the dismissal of the Adversary Proceeding.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1) and (2)(I) and (J). We have jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Whether the bankruptcy court erred when it dismissed the Adversary Proceeding.

**STANDARD OF REVIEW**

We review de novo the bankruptcy court's grant of a Civil Rule 12(b)(6) motion to dismiss. <u>Movsesian v. Victoria</u>

---

[8](...continued)
case, this time seeking to compel the Trustee to sell the alleged choses in action to Creditor, and for relief from stay to pursue the pending actions against AAA (the "Sale/Relief from Stay Motion"). The bankruptcy court denied the Sale/Relief from Stay Motion, and Creditor filed a notice of appeal to be heard by the district court.

6

<u>Versicherung AG</u>, 670 F.3d 1067, 1071 (9th Cir. 2012). De novo means review is independent, with no deference given to the trial court's conclusion. Rule 8013. We may affirm on any basis in the record. <u>See</u> <u>Caviata Attached Homes, LLC v. U.S. Bank, N.A.</u> <u>(In re Caviata Attached Homes, LLC)</u>, 481 B.R. 34, 44 (9th Cir. BAP 2012).

## DISCUSSION

In her opening brief, Creditor articulates five issues for review and asks this Panel to reverse the bankruptcy court's dismissal of the Adversary Proceeding and "remand for a trial on all issues." Apl't Opening Brief at 3-4. Her stated issues, paraphrased, consist of: whether the bankruptcy court correctly applied the Civil Rule 12(b)(6) standard; whether the Protective Order and lack of discovery rendered dismissal inappropriate; whether the bankruptcy court erred by finding no insurance bad faith claims existed and no assets were hidden; and whether the bankruptcy court erred in its interpretation of the Summary Judgment Order. We address each of Creditor's stated issues below, in the context of the three grounds for relief contained in the Complaint.

Creditor did not identify denial of leave to amend the Complaint as an issue on appeal, nor did she include any legal argument that the bankruptcy court abused its discretion by denying leave to amend. We, therefore, deem this issue abandoned, and we will not consider it. <u>See</u> <u>Padgett v. Wright</u>, 587 F.3d 983, 986 n.2. (9th Cir. 2009)(per curiam)(appellate courts "will not ordinarily consider matters on appeal that are not specifically and distinctly raised and argued in appellant's

7

opening brief.").

**A. Standards for Civil Rule 12(b)(6) dismissal**

A motion under Civil Rule 12(b)(6), applicable through Rule 7012, challenges the sufficiency of the allegations set forth in the complaint. The court's review is limited to the allegations of material facts, which must be read in the light most favorable to the plaintiff, and together with all reasonable inferences therefrom, must be taken to be true. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The court need not accept as true allegations that are merely conclusory. St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.), 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

Although a court generally may not consider any material beyond the pleadings, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 (9th Cir. 1989), matters that are properly the subject of judicial notice may be considered along with the complaint. MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986). And, facts properly subject to judicial notice may be used to establish that the complaint does not state a claim for relief. Intri-Plex Techs., Inc. v. Crest Grp., Inc., 499 F.3d 1048, 1052 (9th Cir. 2007). In this regard, a court can properly take judicial notice of court papers filed in related litigation. Estate of Blue v. Cnty. of Los Angeles, 120 F.3d 982, 984 (9th Cir. 1997). A plaintiff's memorandum in opposition to a Civil Rule 12(b)(6) motion, however, cannot serve to supplement or amend the complaint. See Gomez v. Ill. State Bd. of Educ., 811 F.2d 1030, 1039 (7th Cir. 1987). In short, the focus is on the complaint.

A complaint must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). The plaintiff must provide grounds for her entitlement to relief, which requires more than labels and conclusions; and the actions must be based on legally cognizable claims. Twombly, 550 U.S. at 555. The court, thus, need not accept as true mere recitals of a claim's elements, supported by conclusory statements; and the plausibility of a claim is context-specific on review of which the court may draw on its judicial experience and common sense. See Ashcroft v. Iqbal, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1950 (2009); Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Dismissal is appropriate if "well-pleaded facts" do not allow the court to infer "more than the mere possibility of misconduct." Iqbal, 556 U.S. at 679.

**B. Creditor failed to state a claim under § 523(a)(2).**

Section 523(a)(2)(A)[9] excepts from discharge any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement

---

[9] Based on the Creditor's allegations, we infer, as did the bankruptcy court, that while not specific, Creditor's First Claim for Relief under the Complaint, seeks relief under § 523(a)(2)(A), not (B).

9

respecting the debtor's or an insider's financial condition. In the Ninth Circuit, to prove actual fraud, a creditor must establish each of five elements:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000). Therefore, the Complaint must contain either direct or inferential allegations respecting each of these five material elements.

In her first claim for relief, under § 523(a)(2)(A), Creditor seeks a nondischargeable judgment, in an amount to be determined, based on Debtors' alleged fraudulent conduct (the "Fraud Claim"). In the Complaint, Creditor asserts that the Debtors colluded with AAA to obtain the Federal Court DRA absolving AAA of bad faith on the issue of the time-limit demand. In support, Creditor alleges that Debtors admitted in their petition and at the 341(a) hearing that AAA did not act in bad faith, thus, according to Creditor, proving that the Federal Court DRA was contrived and collusive. In addition, Creditor alleges that Debtors, through their counsel, "represented that they would follow the court's ruling assigning their claims to [Creditor], knowing they would be filing bankruptcy in an effort to destroy the claims." Adv. Dkt. #1 at ¶34. The balance of the allegations in support of the Fraud Claim consist of labels, paraphrased elements of a generic fraud claim, and conclusory statements.

10

On its face, the Complaint fails to state a plausible claim against Debtors for fraud.[10]  Even accepting as true Creditor's allegation that Debtors "did not believe there was any wrongdoing on the part of AAA," Creditor does not allege that Debtors could have prevented the Federal Court from entering the Summary Judgment Order if they had disclosed their belief.  Nor does Creditor allege that Debtors knowingly kept silent and intended to deceive by doing so.  Creditor also failed to plead any actual reliance by her, or that she suffered any damages as a proximate result of issuance of the Summary Judgment Order.[11]  We cannot simply infer all the missing material elements of Creditor's Fraud Claim from the sparce factual allegations contained in the Complaint.

Nor does Creditor adequately state a claim under § 523(a)(2)(A) in the one sentence allegation that Debtors misrepresented that they would abide by the State Court's

---

[10]  At oral argument, the bankruptcy court asked Creditor's counsel if he was arguing that the Debtors "defrauded Judge Navarro [at the Federal Court]?"  Hr'g Tr. (January 9, 2013) at 19.  He agreed.  At appellate oral argument, Creditor's counsel argued that the Debtors' fraud on the Federal Court justified Creditor's collateral attack on the Summary Judgment Order.  We conclude herein that neither of these arguments aid the plausibility of Creditor's Fraud Claim against the Debtors.

[11]  As stated above in footnote 5, the Summary Judgment Order has since been stricken and is no longer in effect.  At oral argument in this appeal, the Panel asked Creditor's counsel how Creditor's alleged claims against the Debtors are impacted by having the Summary Judgment Order stricken.  Counsel argued that Creditor's § 523 claims were validated by the 2013 Order striking the Summary Judgment Order.  He could not explain how, and we find this argument illogical.

11

judicial assignment ruling, knowing they would be filing bankruptcy. Again, Creditor fails to plead the other necessary elements of fraud: intent to deceive, reliance, and damages as a proximate result thereof. Thus, we determine that the bankruptcy court appropriately dismissed the Fraud Claim; as pled it was insufficient.

**C. Creditor failed to state a claim under § 523(a)(6).**

Section 523(a)(6) provides that a debtor may not discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." See Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 706 (9th Cir. 2008). Both willfulness and maliciousness must be alleged and proven and the malicious injury requirement is separate from the willful injury requirement. Carrillo v. Su (In re Su), 290 F.3d 1140, 1146-47 (9th Cir. 2002) (conflating the two requirements is grounds for reversal). Tortious conduct is a required element of a § 523(a)(6) claim. Lockerby v. Sierra, 535 F.3d 1038, 1040 (9th Cir. 2008).

Here, Creditor bases her second claim for relief, under § 523(a)(6), on the same allegations Creditor made in support of her Fraud Claim plus alleged "further willful and malicious conduct" by Debtors. Adv. Dkt. #1 at ¶42. Creditor asserts in the Complaint that Debtors' alleged misconduct includes: "filing bankruptcy with the intent of destroying the claims assigned to [Creditor], attempting to have the wrongful death judgment discharged in the bankruptcy, obtaining [the Summary Judgment Order] by collusion, and hiding assets in an attempt to

12

defraud."[12] Id.

Other than perhaps the vague reference to "attempt to defraud,"[13] Creditor fails to allege tortious conduct by the Debtors that, if proven, could support a nondischargeable claim under § 523(a)(6). The Judgment, which was based purely on negligence, is dischargeable in bankruptcy as a matter of law. Therefore, intending such a legitimate consequence can not support a tort under state law. Even if Debtors filed bankruptcy with the specific intent to stop entry of an order on Judge Bare's judicial assignment, nothing is inherently wrong with such an intention. One of the purposes underlying bankruptcy law is to achieve a level playing field for a debtor's creditors. Many bankruptcy filings appropriately are timed to prevent an aggressive creditor, with whom negotiations have stalled or failed, from obtaining an advantage over other creditors; or even just to stop litigation. And, even if an order on the judicial assignment were entered prior to the petition date here, it could conceivably be subject to challenge and avoidance as a preference. See 11 U.S.C. § 547.

Thus, the Creditor's willful and malicious injury allegations fail to state a claim under § 523(a)(6) and we determine the bankruptcy court did not err by dismissing this

---

[12] As with the Fraud Claim, the Complaint includes a few additional paragraphs in support, but they consist of labels, paraphrased bare elements of a § 523(a)(6) claim mixed with fraud elements, and conclusory statements.

[13] As discussed above, the Complaint fails to state a claim for recovery on a fraud theory and the inclusion of "hiding assets" does not cure the deficiencies.

13

claim; as pled, the § 523(a)(6) claim was insufficient.

**D.  Creditor did not state a claim under § 727(a).**[14]

Section 727(a)(2) provides that the court shall grant the debtor a discharge, unless-

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed-
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition

Simply stated, Creditor alleges that Debtors failed to disclose in their original schedules the possible insurance bad faith claims and potential legal malpractice actions, thus concealing assets within one year of filing, and continuing the concealment after filing.  She argues on appeal that the bankruptcy court erred by construing facts in a light most favorable to the Debtors rather than Creditor, contrary to the Civil Rule 12(b)(6) standard, disregarding uncontroverted affidavits valuing the possible bad faith claims, and finding that Debtors did not attempt to conceal any claims.

As a preliminary matter, we determine that the bankruptcy court did not err by disregarding "affidavits" that were

---

[14]  Creditor's opening brief on appeal contains extensive argument regarding application of judicial estoppel:  arguing both that Debtors should be judicially estopped from arguing that bad faith claims exist and judicially estopped from arguing they do not exist.  Not only are these arguments nonsensical, a judicial estoppel argument is inappropriate on review of a dismissal under Civil Rule 12(b)(6), and we do not address it further herein.

14

apparently submitted by Creditor in connection with another motion she filed in the bankruptcy case. A Civil Rule 12(b)(6) motion involves review of the pleadings for sufficiency, not review of evidentiary submissions unless the bankruptcy court, pursuant to Civil Rule 12(d), determines to treat the motion as one for summary judgment under Civil Rule 56. The bankruptcy court did not do so here. Thus, the bankruptcy court did not err by disregarding the affidavits.

We also note that the bankruptcy court determined, based in part on its review of the Summary Judgment Order, that Debtors had no legal basis to schedule possible insurance bad faith claims against AAA. In light of the 2013 Order, any reliance placed on judicial notice taken of the Summary Judgment Order is no longer appropriate, and could be considered error. As discussed below, however, such error would be harmless. Moreover, reliance on the Summary Judgment Order is not critical to our conclusion that Creditor's § 727(a)(2) claim is not plausible.

Specifically, the Complaint includes the following paragraphs[15] in connection with Creditor's § 727(a)(2) claim:

> ¶15. During AAA's handling of the liability claims against the [Debtors], AAA made a number of claims handling failures which gave the [Debtors] certain causes of action against AAA (the "Claims").

---

[15] Creditor incorporated all earlier pled paragraphs into the specific claim for § 727(a)(2) relief. We do not quote all the paragraphs of the Complaint that contain mere conclusory statements, but focus on the paragraphs from which we may determine the plausibility/implausibility of Creditor's § 727(a)(2) claim.

15

¶16.  Under Nevada law, because of AAA's claims handling failures, it is liable for all amounts owed by the [Debtors] to [Creditor] above the $100,000 policy limits.

¶24.  Furthermore, as admitted in their petition and 341 meeting, they did not believe there was any wrongdoing on the part of AAA proving that the declaratory relief action was contrived and collusive. See Amended Schedule B.

¶27.  On August 27, 2012, Hon. Rob Bare verbally ordered the bad faith claims and legal malpractice claims[16] the Debtors had against AAA and their attorneys would be assigned to [Creditor] and the [Debtors] would cooperate in evaluating and bringing the claims, in full satisfaction of the judgment.

¶29.  The [D]ebtors did not list or hid (sic) the assets of their claims against AAA.

¶30.  Debtors have not been forthcoming with the officers of the estate in regards to their assets, including their claims against AAA and other related issues to their fraudulent and deceitful behavior.

¶42.  That this further willful and malicious conduct included, but is not limited to, filing bankruptcy with the intent of destroying the claims assigned to [Creditor], attempting to have the wrongful death judgment discharged in the bankruptcy, obtaining a Federal DRA judgment by collusion, and hiding assets in an attempt to defraud.

Fourth Claim for Relief[17]

¶47.  Debtors, with the intent to hinder, delay, and continually defraud [Creditor] and the officers of the estate charged with custody of the propery (sic), has (sic) concealed property of the debtor, within one yer before the date of the filing of the petition and property of the estate since the filing of the petition.

¶49.  That Debtor, (sic) contrary to information

---

[16]  This is one of only three limited references to malpractice claims contained in the Complaint.  The other two references are equally skeletal and conclusory.

[17]  The Complaint does not contain a "Third Claim for Relief."

16

contained in the petition and testified to by Debtors in the 341 Creditors' Meeting, have valuable claims against AAA and legal malpractice claims against their attorneys.

¶50.   That this conduct by Debtors was fraudulent and malicious.

Adv. Dkt. #1.

### 1.   Possible insurance bad faith claims

The sufficiency of the § 727(a)(2) claim, in substantial part, turns on the sufficiency of Creditor's assertion that insurance bad faith claims exist,[18] as well as her allegation that Debtors intentionally concealed the existence of such claims.   Embedded in Creditor's allegations are legal conclusions regarding the existence of insurance bad faith claims, asserted by Creditor as fact, without legal (or factual) support.   These conclusions do not logically flow from factual allegations in the Complaint; they are not otherwise supportable; and, thus, they are not entitled to the presumption of truth.   We, therefore, find Creditor's bare assertions do not establish a plausible § 727(a)(2) claim.

Our Civil Rule 12(b)(6) plausibility analysis is informed not only by evaluation of the Complaint itself, but by our common sense and judicial experience.   As was the bankruptcy court, we are aware of Creditor's prepetition attempt to execute on the Judgment by seeking judicial assignment of potential insurance bad faith claims, coupled with a requirement that the Debtors cooperate fully in identifying and bringing such claims.   In

---

[18]   A minor part of the § 727(a)(2) claim is based on the sufficiency of Creditor's assertion that legal malpractice claims exist, which we separately address below.

17

addition, we are aware of the multiple unsuccessful, or withdrawn, motions filed by Creditor in the bankruptcy case, directed toward discovery attempts in order for Creditor to identify facts to support the potential bad faith claims (i.e., the 2004 exam quashed by the Protective Order), and/or acquisition by Creditor of authority to pursue the potential claims in other courts. It is apparent that Creditor's perspective is that of a person not privy to the relationship between the insurer (AAA) and the insureds (Debtors), the relationship from which any insurance bad faith claims must necessarily arise. And it is apparent that, during the five-plus years of prepetition litigation, Debtors did not pursue insurance bad faith claims against AAA, a fact consistent with the Creditor's allegation that Debtors did not believe there was any wrongdoing committed by AAA.[19]

Creditor merely asserts that AAA made "claims handling failures" for which AAA is liable to Debtors for all liability in excess of policy limits.[20] The foundation for Creditor's

---

[19] Which we note is entirely consistent with the Amended Schedule B.

[20] In Nevada, insurance claims handling standards are set forth in Nevada Revised Statute § 686A-310. The statute lists six activities considered to be unfair practices and provides that an "insurer is liable to its insured for any damages sustained by the insured as a result of the commission of any act set forth in subsection 1 as an unfair practice." N.R.S. § 686A.310(2). This statutory provision does not state that claims handling failures automatically entitle an insured to all amounts in excess of policy limits, as Creditor alleges in the Complaint. Creditor does not identify any particular misconduct
(continued...)

18

allegation that Debtors failed to disclose a valuable asset is no more than a mere possibility that such asset exists. The Complaint fails to sufficiently allege that Debtors have any legal basis to file insurance bad faith claims against AAA. The mere possibility that such claims exist[21] does not support a plausible claim that Debtors concealed a valuable asset.[22]

Creditor argues that she was prevented, by the Protective Order, from conducting discovery into facts that could support the insurance bad faith claims. She argues that because the Adversary Proceeding was dismissed before discovery could be taken, "[i]t was impossible for [Creditor] to gather any more information then (sic) was previously provided to the court regarding the claims . . . . " Apl't Opening Brief at 23. But, as discussed by the Supreme Court in Iqbal, a complaint that does

---

[20](...continued)
by AAA nor does Creditor allege that Debtors suffered any damages as a result thereof.

[21] On appeal, Creditor argues that the "possibility" cannot "be foreclosed that AAA failed to settle" and "there is no evidence" that "offers were adequately communicated." Apl't Opening Brief at 23 and 21, respectively. Such additional alleged possibilities, even if they could appropriately be considered when raised for the first time on appeal, would not render Creditor's claims plausible.

[22] In addition, we note that in their original statement of financial affairs filed with their petition, Debtors disclosed the existence of the pending litigation in State Court regarding "insurance proceeds." This disclosure, of which we may take judicial notice, is facially inconsistent with Creditor's conclusory allegation that Debtors concealed the existence of the disputed claims, and would serve to alert the Trustee to the need to explore the pending litigation on behalf of all creditors of the estate.

not state a plausible claim for relief, "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678-79. The plausibility requirement, therefore, appropriately serves as a barrier to discovery when not established.

We acknowledge that Creditor's Judgment is based on Creditor's loss of her husband under horrible circumstances. Nonetheless, Creditor's loss was caused by Chau's negligence, not by any intent to cause harm. And, as the Judgment is based on negligence, it is fully dischargeable in Debtors' bankruptcy case as a matter of law. The Complaint appears to be driven by Creditor's desire to obtain and prosecute unfiled insurance bad faith claims as a means to collect more of the amount of the Judgment than will be possible in Debtors' "no asset" chapter 7 bankruptcy case. Creditor's attempt to collect through other types of claims requires legal justification. Creditor concedes that Debtors have disavowed any basis for the claims, and the Trustee determined not to pursue them on behalf of the estate. We, therefore, conclude that the Complaint cannot pass the Iqbal plausibility standard by hoping and insisting that the claims exist; as pled the § 727(a)(2) claim based on alleged insurance bad faith claims is insufficient.

**2. Potential legal malpractice claims**

On appeal, Creditor argues that the bankruptcy court disregarded the potential attorney malpractice claims. The bankruptcy court's Memorandum Decision did not directly discuss the Complaint's allegations regarding the legal malpractice claim. The bankruptcy court acknowledged, however, that, as

20

stated in the Amended Schedule B, Debtors did not believe they existed. The bankruptcy court also noted that Creditor had attempted to examine the Debtors pursuant to Rule 2004 concerning potential attorney malpractice claims along with the possible insurance bad faith claims. At oral argument in this appeal, Creditor's counsel represented to the Panel that Creditor did not know whether the Debtors retained their own counsel or if counsel was retained by the insurer, a question that Creditor sought answers for through discovery that was blocked by the Protective Order.

Based on our review of the record here, we determine that the Complaint's reference to legal malpractice claims suffers from the same deficiencies as discussed above with respect to the possible insurance bad faith claims. The Complaint is devoid of allegations that Debtors had any grounds to commence suit against any attorney – for any reason. The Complaint only mentions legal malpractice claims as possibilities that Creditor, in essence, wants to explore. That desire is not enough to establish the plausibility that a claim exists. Not only does this desire fail to support a § 727(a)(2) claim, we are mindful that no existing bankruptcy policy would be served by encouraging third parties to initiate litigation against debtors' pre-bankruptcy attorneys based only on unsupported speculation; as pled the § 727(a)(2) claim based on alleged malpractice claims is insufficient.[23]

_____

[23] Assignment of unfiled potential legal malpractice claims, if grounds were sufficiently alleged to exist, is not permitted under Nevada law. See Chaffee v. Smith, 98 Nev. 222,
(continued...)

21

**CONCLUSION**

Based on the foregoing, we AFFIRM the bankruptcy court's dismissal of the Adversary Proceeding.

---

[23](...continued)
224; 645 P.2d 966 (1982) (public policy prevents the transfer of a previously unasserted claim for legal malpractice because "the decision as to whether to bring a malpractice action against an attorney is one peculiarly vested in the client".). Here, both the attorney-client privilege and the right to file any suit based on legal malpractice claims are held by the Trustee, not the Debtors. And we note that Trustee determined that such claims held no value for the chapter 7 estate, presenting another layer of impediment to Creditor's ability to plausibly allege a claim for legal malpractice.

22