**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                          )    BAP No. NV-16-1073-JuKuL
                                )
JOSEPH MICHAEL SUNDE, DBA       )    Bk. No. 3:14-bk-50937-BTB
Nevada Quick Divorce, AKA       )
J. Michael Sunde, AKA Joseph    )    Adv. No. 3:14-ap-05044-BTB
Sunde, AKA Mike Sunde and       )
VIKTORIYA SOKOL SUNDE, AKA      )
Viktoriya Sokol,                )
                                )
                 Debtors.       )
_____ )
JOSEPH MICHAEL SUNDE;           )
VIKTORIYA SOKOL SUNDE,          )
                                )
                 Appellants,    )
                                )
v.                              )    **M E M O R A N D U M**[1]
                                )
VICTORIA A. CROCKETT,           )
individually and as Trustee of  )
the ERKP Family Trust; ROBERT   )
D. CROCKETT; NEVADA DIVORCE &   )
DOCUMENT SERVICES, INC., a      )
Nevada Corporation,             )
                                )
                 Appellees.     )
_____ )

Argued and Submitted on February 24, 2017
at Las Vegas, Nevada

Filed - March 10, 2017

Appeal from the United States Bankruptcy Court for the
District of Nevada

Honorable Bruce T. Beesley, Chief Bankruptcy Judge, Presiding
_____

Appearances:   Appellant Joseph Michael Sunde argued pro se;

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

-1-

Michael Lehners argued for appellees.
_____

Before: JURY, KURTZ, and LAFFERTY, Bankruptcy Judges.

Appellees, Victoria A. Crockett, Robert D. Crockett (collectively, the Crocketts), and Nevada Divorce and Document Services, Inc. (NDDSI), filed an adversary complaint against appellants, Joseph Michael Sunde and Victoriya Sunde (collectively, the Sundes), seeking to except a state court judgment debt from discharge under § 523(a)(6).[2] The Crocketts alleged that the Sundes willfully and intentionally (1) destroyed real property located on Greenwich Way in Reno, Nevada (Greenwich Property) which the Crocketts owned and leased to the Sundes; (2) recorded numerous documents that clouded title on the Greenwich Property; and (3) transmitted false and defamatory statements of fact to Mr. Crockett's employer.

After a twelve day trial, the bankruptcy court found that the Sundes' removal of improvements and landscaping from the Greenwich Property fell within the scope of § 523(a)(6). The court entered a nondischargeable judgment against the Sundes consisting of $30,849.00 in damages awarded by a jury and $69,580.31 for attorney's fees and costs awarded by the state court pursuant to an attorney's fee clause in the underlying lease between the parties. The Sundes appealed from this judgment.

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure.

-2-

The Sundes filed a motion to alter or amend the judgment, arguing that the bankruptcy court was required to find the Sundes' conduct was tortious under state law to fall within § 523(a)(6). After a limited remand from this Panel, the bankruptcy court denied the motion by order entered July 22, 2016. The Sundes filed an amended notice of appeal to include the July 22, 2016 order.

For the reasons set forth below, we VACATE the judgment in the Crocketts' favor and REMAND to the bankruptcy court to make further findings as discussed in this decision.

## I.   FACTS[3]

**A.   Prepetition Events**

On August 23, 1996, Mr. Sunde created NDDSI, a Nevada corporation. NDDSI issued 100 shares of stock which were owned by Mr. Sunde.

Victoria Crockett is the daughter of Mr. Sunde and also the trustee of the ERKP Family Trust which was created in July 2002. Mr. Sunde is the sole beneficiary of the trust, and he contributed his 100 shares in NDDSI to the trust. Victoria, as trustee, was to make monthly payments to Mr. Sunde for his retirement, which were funded from NDDSI. Since January 20, 2011, Victoria has been the sole director and chief executive officer of NDDSI.

---

[3] To the extent necessary, we take judicial notice of pleadings filed by both parties in the adversary proceeding and underlying bankruptcy case. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

-3-

**1.   The Greenwich Property**

In 2000, the Crocketts purchased the Greenwich Property for $230,000.  On March 1, 2008, the Crocketts and the Sundes entered into a twelve month lease agreement for the property (March 2008 Lease).  Paragraph 9 of the March 2008 Lease states:

> Any and all leasehold improvements and fixtures done and paid for by Lessee shall revert to Lessor.  Lessee shall have no ownership interest in such leasehold improvements or fixtures.

The March 2008 Lease required the Sundes to maintain the property in good condition and contained an attorney's fee clause.

Mr. Sunde provided another lease dated July 15, 2008 (July 2008 Lease) which he maintains is the controlling lease between the parties.  Paragraph 8 of that lease provided that the lessor agreed that any improvements and fixtures done and paid for by the Sundes would be owned by the Sundes and that lessor agreed to compensate them for the improvements, repairs and fixtures should they vacate the home for any reason whatsoever.

While living in the property, Mr. Sunde made various improvements to the property which he paid for.

**2.   The Legal Proceedings**

**a.   J. Michael Sunde & Viktoriya Kokol Sunde v. Robert and Victoria Crockett (CV10-01187)**

By 2010 the relationship between the parties had soured. According to Mr. Sunde, this happened because he got remarried and Victoria did not want his new wife, Viktoriya, to get any of his assets.

In April 2010, the Sundes filed a complaint against the

-4-

Cracketts in the Nevada state court, Case No. CV10-01187. The Sundes alleged that Victoria breached her fiduciary duties as trustee of the ERKP Family Trust by stealing Mr. Sunde's retirement funds and refusing to pay him. They also asserted a claim of elder abuse, contending that Victoria was attempting to destroy NDDSI and force the Sundes to the streets. The Sundes sought to replace Victoria as trustee of the ERKP Family Trust. In essence, the Sundes sought to regain control of NDDSI and the family trust. This case was consolidated with <u>Nevada Divorce & Document Services, Inc. v. Michael Sunde et. al.</u>, Case No. CV10-0218. Although the record is sketchy, apparently the Sundes lost and were not granted the relief requested.[4] During the lawsuit, Mr. Sunde filed a lis pendens against all properties owned by the Cracketts in the Washoe County Recorder's Office.

### b. The Eviction Proceedings

The Sundes lived in the Greenwich Property until the Cracketts served them with a notice of eviction based on unpaid rent and a no-fault end of lease, letting the Sundes know that the Cracketts would not continue the lease after February 28, 2011.

On December 20, 2010, the Justice Court of Reno Township issued an eviction decision and order in favor of the Cracketts. The Justice Court ordered the Sundes to pay rent of $2100 directly to the Cracketts rather than the mortgage company. The

---

[4] In closing argument of the bankruptcy court trial, counsel for the Cracketts argued that it was reasonable to assume that the Sundes were motivated to destroy the Greenwich Property after losing the lawsuit over the business and the trust.

-5-

eviction proceeding was dropped after Mr. Sunde paid the rent.

In late January 2011, the Sundes moved from the Greenwich property.[5] Before they moved, they removed and destroyed improvements made to the property, including cabinets, doors, and landscaping.

### c. Robert and Victoria Crockett v. Michael Sunde et. al. (CV11-00307)

On January 28, 2011, the Crocketts filed a lawsuit against the Sundes in the Nevada state court, Case No. CV11-00307. In the background facts common to all claims for relief, the Crocketts alleged that in January 2011, the Sundes began to destroy the Greenwich Property by removing or destroying front bushes and shrubs, back bushes and shrubs, the air conditioner unit, and numerous built-in cabinets and casings. The Crocketts further alleged that the Sundes returned to the home on January 27, 2011, and removed, among other things, various landscaping in the front of the home. According to the Crocketts, these actions violated the terms of the March 2008 Lease, as the items removed solely belonged to the Crocketts. Based on these facts, the Crocketts alleged claims for breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, and unjust enrichment. They also requested a temporary restraining order and preliminary injunction. Attached to the complaint was the March 2008 Lease.

---

[5] In its findings of facts and conclusions of law, the bankruptcy court noted that it was unclear whether the Sundes were evicted or whether they moved out during the eviction process.

On February 4, 2011, the state court heard the Crocketts' request for a preliminary injunction. The initial argument centered on whether the March 2008 Lease or the July 2008 Lease was the enforceable lease. Later in the hearing, the judge asked Mr. Sunde where the cabinets were. Mr. Sunde responded that he had hired some workers and they took them to the dump. Mr. Sunde stated on the record:

I hired them. I said do you need a truck. They came. We loaded stuff up, and yeah, I tore things apart. They broke. I wasn't sitting there playing with things. I tore them apart quickly because I wasn't going to spend careful time on stuff I was going to throw in the dump. They put it in the truck. I says, 'Go to the dump. Get a receipt from the dump. Dump it, come back get some more. . . .

At another point, he said:

Do you think I like throwing out what I put in? You think I didn't cry every God damn day that I went -- excuse me, Your Honor -- that I tore that place apart? Think I didn't cry at night when I went to sleep because I was tearing my own house apart that I built? It wasn't fun. But I wasn't about to give it to her after she already stole from me as much as she did. I was fighting for my life when she stole my retirement. I was almost on the street. Now she wants me to turn over $205,000 to her? No. I won't. She signed that lease. The [July 15, 2008] lease is valid. I had a legal right to do what I did.

The court:

Well, is it fair to say, then, that you're contending that the cabinetry and other elements of the house including the landscaping are things you put into this property that you didn't want the Crocketts to get? Is that why you removed them?

Mr. Sunde: I didn't want them to get them.

In the end, the state court found that the operative lease was the March 2008 Lease and, therefore, Mr. Sunde had no right to remove the fixtures to the house.

So there is a big problem, and it's wrongful to remove the fixtures when you are the tenant. So I am going to grant the preliminary injunction. And I would also say that as part of that, that if you have any of these things that were removed from the house, you are required to return them.

On October 10, 2011, the Crocketts moved to amend their complaint. The Crocketts maintained that after the original complaint was filed, the Sundes recorded a lis pendens against the Greenwich Property on April 20, 2011, and July 18, 2011.[6] They further alleged that in August 2011, the Sundes sought a Writ Of Prohibition And Madamus to prevent the sale of the Greenwich Property in the Nevada state court. The Sundes recorded other documents as well. On August 30, 2011, they recorded an Emergency Motion to Appoint a Receiver, Remove Trustee, for Restraining Order and Injunctive Relief and for an Accounting (Emergency Motion). On September 9, 2011, the Sundes recorded an application for a default judgment. The Crocketts alleged that the recording of these documents was not authorized.

The Crocketts also alleged that in September 2011, Mr. Sunde sent a document to Mr. Crockett's supervisor at his employment that contained false statements that the Crocketts had stolen money and property from the Sundes in an attempt to render them homeless.

Finally, the Crocketts alleged that in July 2011, they

---

[6] On July 26, 2011, the state court entered an order in Case Nos. CV10-01187 and CV11-00307 cancelling the lis pendens that Mr. Sunde had filed against the Greenwich Property on July 18, 2011.

entered into a purchase and sale agreement to sell the Greenwich Property for $239,000. Due to the Sundes' recorded documents, the sale was cancelled. Afterwards, the Nevada state court denied Mr. Sunde's Emergency Motion, but then he filed an improper application for default judgment with the court.

The amended complaint continued to assert claims for breach of contract, breach of the covenant of good faith and fair dealing, conversion, unjust enrichment, and temporary restraining order and added claims for defamation, slander of title, temporary and permanent injunction, intentional interference with contractual relations, and intentional interference with prospective economic advantage.

At a September 20, 2011 hearing, the state court authorized the Crocketts to file their amended complaint and issued a preliminary injunction which prohibited the Sundes from filing or recording anything in the chain of title of property owned by the Crocketts and prohibited Mr. Sunde from contacting Mr. Crockett's employer. The state court found that the legal documents Mr. Sunde filed were an "abuse of process" and "an inappropriate use of the recording laws in the State of Nevada."

Eventually, the matter was heard by a jury. Jury instructions were given for breach of contract, breach of the covenant of good faith and fair dealing, and conversion. After a five-day trial, the jury returned a verdict in favor of the Crocketts for $30,849.00 plus accrued interest.[7] On

---

[7] The Sundes answered the amended complaint and asserted counterclaims alleging, among other things, that the Crocketts
(continued...)

-9-

December 16, 2013, the state court entered a judgment against the Sundes for this amount. There are no findings in the judgment as to which claim the Crocketts prevailed on nor did the jury answer special interrogatories pertaining to its verdict.

The Crocketts then moved for attorney's fees and costs, which were authorized by an attorney's fee clause in the March 2008 Lease. They sought $64,350 in attorney's fees, $120 in paralegal fees and $5,230.31 in costs, totaling $69,580.31. The Sundes opposed the motion on reasonableness and other grounds. In its order granting the motion, the state court noted that the case "arose from a contract dispute" involving a residential lease.[8] The state court noted that the March 2008 Lease provided for reasonable attorney's fees to the prevailing party and found that the Crocketts were the prevailing party. The court also found the fees reasonable and awarded the attorney's fees and costs in full as requested. On January 27, 2014, the state court entered an order granting the Crocketts their fees and costs.

**B.  Bankruptcy Events**

On May 29, 2014, the Sundes filed a chapter 7 case.

**1.  The Adversary Complaint**

On August 18, 2014, the Crocketts filed an adversary

---

[7](...continued) had converted their property. The Sundes did not prevail on any of their claims.

[8] This language suggests that the jury awarded damages only for breach of contract.

complaint against the Sundes alleging claims under §§ 523(a)(4) (breach of fiduciary duty)[9] and (6) (willful and malicious), § 727(a)(4) (denial of discharge), and § 524(a)(3) (community discharge). Only the § 523(a)(6) claim is at issue in this appeal. The § 523(a)(6) claim was based on the Sundes' destruction of the Greenwich Property, their unlawful recording of numerous documents that clouded title to the property, and their false and defamatory statements to Mr. Crockett's employer. Based thereon, the Crocketts sought a declaration that the state court judgment debt was nondischargeable based on the Sundes' willful and malicious conduct.

The bankruptcy court held a trial over twelve days. The Sundes appeared pro se. On January 19, 2016, the bankruptcy court issued an oral ruling setting forth its findings of fact and conclusions of law. The court found that the Sundes had removed improvements and landscaping from the Greenwich Property at the time they were being moved out of the home by the Crocketts. The court found that Mr. Sunde indicated he did that was because he was angry, he was being moved out of the home, which he thought would be his for life, and he didn't want his daughter to have the benefit of any of the improvements he had made. The court also found that the March 2008 Lease was the operative lease. Finally, the court found the Sundes were not credible and the Crocketts were credible. The bankruptcy court concluded that all the damages awarded in the state court jury

---

[9] The § 523(a)(4) claim was dismissed by order entered on February 13, 2015.

-11-

trial case, including the attorney's fees, were nondischargeable.

On February 12, 2016, the bankruptcy court entered written findings of fact and conclusions of law consistent with its oral ruling.

On March 9, 2016, the bankruptcy court entered a judgment in favor of the Crocketts, finding the state court judgment debt consisting of damages and attorney's fees and costs nondischargeable under § 523(a)(6). The Sundes timely appealed from that judgment. The Sundes filed an amended notice of appeal on March 22, 2016.

**2.    The Motion To Alter Or Amend The Judgment**

On the same day that they filed the amended notice of appeal, the Sundes filed a motion to alter or amend the judgment or motion for new trial. There, they argued, among other things, that the Crocketts failed to mention a tort in their adversary complaint. They also complained that the bankruptcy court failed to mention a tort in its findings of fact and conclusions of law. According to the Sundes, a finding of tortious conduct under Nevada law is essential to a § 523(a)(6) claim. The Sundes maintained that the "'gist' of all claims, testimony, and evidence prove without doubt that this is only a contract claim."

The bankruptcy court heard the motion on June 1, 2016. On the same day, the court also heard the Sundes' motion for a stay pending appeal. The court first addressed the Sundes' motion for stay pending appeal and considered whether they were likely to succeed on appeal. In response to Mr. Sunde's argument

-12-

regarding the requirement of a tort, the bankruptcy court stated: "Well, destruction of property is a tort. You don't have to say, quote, 'tort destruction of property.'"

Mr. Sunde: "Well, you do, Your Honor. You have to specifically argue that there's a tort, and we have the research to show that if you don't specifically argue -- name the tort, specifically argue it, you don't have a tort."

In support of his argument, Mr. Sunde relied on <u>Spigot Resources, Inv. v. Radow (In re Radow)</u>, 2013 WL 1397342 (9th Cir. BAP Apr. 2, 2013); <u>Lockerby v. Sierra</u>, 535 F.3d 1038, 1040 (9th Cir. 2008), and <u>Buenaventura v. Vinh Chau (In re Vinh Chau)</u>, 2014 WL 643726 (9th Cir. BAP Feb. 19, 2014).

Mr. Sunde further argued that there were no damages because the Sundes provided evidence that they made $230,000 worth of improvements and Victoria testified that she spent about $15,000 or $20,000 to remodel after the Sundes left. According to Mr. Sunde, the Crocketts still had benefitted by the sum of about $210,000 from his efforts. After oral argument, the bankruptcy court denied the motion to amend the judgment.

On June 13, 2016, the Sundes filed a motion for reconsideration of the court's denial of their motion to amend the judgment.

On June 24, 2016, the Panel entered an order granting a limited remand so that the bankruptcy court could enter an order on the Sundes' motion for reconsideration and to enter any order regarding the unresolved §§ 727(a)(4) and 524(a)(3) claims in the adversary.

On July 19, 2016, the bankruptcy court entered an order

-13-

denying the Sundes' request for a stay pending appeal.

On July 22, 2016, the bankruptcy court entered an order denying the Sundes' motion to alter or amend the judgment and denying their motion for reconsideration of that ruling. There, the court found that it properly identified the tortious conduct even though it had not mentioned the word "tort" in its findings and conclusions. The court dismissed the remaining claims, thereby rendering its judgment on the § 523(a)(6) claim final for purposes of this appeal.[10]

On August 1, 2016, the Sundes filed a third amended notice of appeal to include the bankruptcy court's July 22, 2016 order denying their motion to amend the judgment and their motion for reconsideration of that decision.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Did the bankruptcy court err in determining that the state court judgment was nondischargeable under § 523(a)(6)?

Did the bankruptcy court err in denying the Sundes' motion to alter or amend the judgment?

## IV. STANDARDS OF REVIEW

"Because the bankruptcy court entered its judgment after trial, we review the bankruptcy court's findings of fact for

---

[10] On May 17, 2016, the § 727(a)(4) claim was dismissed. On July 22, 2016, the bankruptcy court dismissed the § 524(a)(3) claim.

-14-

clear error, and its conclusions of law de novo." Thiara v. Spycher Brothers (In re Thiara), 285 B.R. 420, 426 (9th Cir. BAP 2002) (citing Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002)). A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1261-62 & n.21 (9th Cir. 2009) (en banc). "The bankruptcy court's conclusions of law regarding nondischargeability, as well as its interpretation of state law, are reviewed de novo." In re Thiara, 285 at 426. We also review de novo the bankruptcy court's application of the legal standard in determining whether a debt resulting from a debtor's wrongful conduct is dischargeable as a willful and malicious injury. Id.

We review the bankruptcy court's denial of a motion to alter or amend the judgment for abuse of discretion. Ta Chong Bank Ltd. v. Hitachi High Techs. Am., Inc., 610 F.3d 1063, 1066 (9th Cir. 2010). Under the abuse of discretion standard, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." Hinkson, 585 F.3d at 1262. If the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id.

## V. DISCUSSION

**A. Section 523(a)(6): Legal Standards**

Section 523(a)(6) excepts from discharge any debt "for

-15-

willful and malicious injury by the debtor to another entity or to the property of another entity." The willful and malicious requirements are analyzed separately, and both elements must be met. In re Su, 290 F.3d at 1146-47; Ormsby v. First Am. Title Co. of Nev. (In re Ormsby), 591 F.3d 1199, 1206 (9th Cir. 2010).

Whether a debtor acted willfully is a subjective inquiry: the "willful injury requirement is met only when the debtor has a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct." In re Ormsby, 591 F.3d at 1206. Further, when determining the debtor's intent under § 523(a)(6), there is a presumption that the debtor knows the natural consequences of his actions. Id.

"'A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse.'" In re Su, 290 F.3d at 1146-47. "Malice may be inferred based on the nature of the wrongful act." In re Ormsby, 591 F.3d at 1206.

When the debt in question arises out of a contract, in addition to willfulness and maliciousness, a plaintiff must also show that the injury was caused by intentional tortious conduct. Lockerby v. Sierra, 535 F.3d 1038, 1040-42 (9th Cir. 2008) (citing Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1205 (9th Cir. 2001) ("[a]n intentional breach of contract is excepted from discharge under § 523(a)(6) only when it is accompanied by malicious and willful tortious conduct."). Conduct is tortious if it constitutes a tort under state law. Lockerby, 535 F.3d at 1041. A state court judgment debt based

-16-

solely on a simple breach of contract is dischargeable as a matter of law. Snoke v. Riso (In re Riso), 978 F.2d 1151 (9th Cir. 1992).

**B.   Analysis**

Applying these standards, we conclude that the bankruptcy court's findings of fact and conclusions of law are inadequate for our review.  The court summarily concluded that the willful and malicious elements were met without connecting the Sundes' conduct or the Crocketts' damages to any tort recognized by Nevada law.  In the absence of such findings, we cannot tell whether the Sundes' conduct fell within the scope of one or more of the numerous torts mentioned throughout this proceeding or whether the Crocketts' damages arose out of that tort as opposed to breach of contract.  Indeed, the link between a tort under Nevada law and the Sundes' conduct has been a moving target throughout these proceedings.

In the adversary complaint, the Crocketts alleged destruction of property, defamation, and wrongful recording of documents (abuse of process) as the basis of their § 523(a)(6) claim.  During closing argument, Crocketts' counsel argued that the tort of conversion applied to the Sundes' conduct and cited the definition for conversion under Nevada law:

> [A] distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation, exclusion, or defiance of such title or rights.  Additionally, conversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge.

Evans v. Dean Witter Reynolds, Inc., 5 P.3d 1043, 1048 (Nev. 2000).  This definition does not require the subjective intent

-17-

for willful conduct under § 523(a)(6). Compare In re Jercich, 283 F.3d at 1207 ("The conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury, constitutes a willful and malicious injury within the meaning of § 523(a)(6)."). In any event, nowhere does the bankruptcy court mention whether the tort of conversion was the basis for its decision.

Counsel next argued that in addition to damaging the Greenwich Property, there was evidence that the Sundes slandered the title[11] and committed abuse of process. Counsel explained the elements for slander of title and abuse of process, but nowhere does the bankruptcy court mention whether the Sundes' recording of the lis pendens or other documents fell within the scope of those torts under Nevada law or whether any of the damages awarded by the state court were as a result of these acts.

Later, at the hearing on the Sundes' motion to alter or amend the judgment and motion for a stay pending appeal, the Sundes argued that the Crocketts failed to mention, much less prove, that their conduct was tortious under Nevada law, a

---

[11] Slander of title is a tort under Nevada law and involves false and malicious communications that disparage a person's title in land and causes special damages. See Summa Corp. v. Greenspun, 655 P.2d 513, 514 (Nev. 1982) and Higgins v. Higgins, 744 P.2d 530, 531 (Nev. 1987). Slander of title has been found to be a basis for a § 523(a)(6) claim. See Gambino v. Koonce, 757 F.3d 604 (7th Cir. 2014) (Illinois judgment for slander of title for use of forged deeds and other fraudulent documents to improperly gain title held non-dischargeable).

-18-

requirement under Ninth Circuit law. The requirement of tortious conduct was therefore squarely before the bankruptcy court. During that hearing, the bankruptcy court found that the tort was the destruction of property, thus implying that the tort requirement had been met. However, nowhere did the Crocketts argue that Nevada recognized a tort for the destruction of property, and we cannot determine whether such a tort exists for the first time on appeal.[12]

Finally, we cannot tell whether the state court awarded damages or attorney's fees based on the Sundes' tortious conduct or whether those awards were based solely on breach of contract. Accordingly, the bankruptcy court erred by giving preclusive effect to the amount of the damages and award of attorney's fees

---

[12] The closest we could find to a tort for destruction of property in Nevada is embodied in a criminal statute. Nevada Revised Statutes 206.310, entitled "Injury to other property," provides:

1. Every person who shall willfully or maliciously destroy or injure any real or personal property of another, for the destruction or injury of which no special punishment is otherwise specially prescribed, shall be guilty of a public offense proportionate to the value of the property affected or the loss resulting from such offense.

2. It is not a defense that the person engaging in the conduct prohibited by subsection 1 holds a leasehold interest in the real property that was destroyed or injured.

The statute does not expressly recognize a civil cause of action, but we need not decide whether there is one for the first time on appeal. The bankruptcy court should decide whether a civil cause of action exists for destruction of property in the first instance if it allows the Crocketts to pursue this tort theory.

-19-

without connecting those awards to damages caused by the Sundes' tortious conduct.

In sum, it is impossible for us to determine whether the bankruptcy court properly applied the law to the facts in this case. Therefore, on remand, the bankruptcy court should address whether the Sundes' conduct was tortious under Nevada law based on the evidence presented at trial and determine whether the damages awarded by the state court are recoverable based on that tort. In light of our decision, it is unnecessary to address the other issues raised by the Sundes on appeal.

## VI. CONCLUSION

For the reasons stated, we VACATE the judgment in the Crocketts' favor and REMAND to the bankruptcy court to make further findings as discussed in this decision.